UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20273-CR-MORENO

**UNITED STATES OF AMERICA**,

v.

**BILL K. KAPRI,**
**a/k/a DIEUSON OCTAVE,**
**a/k/a "KODAK BLACK,"**

           **Defendant.**
_____/

GOVERNMENT'S APPEAL OF MAGISTRATE'S ORDER
DENYING MOTION FOR PRETRIAL DETENTION
AND SETTING CONDITIONS OF PRETRIAL RELEASE

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and, pursuant to 18 U.S.C. § 3145(a), files this appeal of Magistrate Judge Edwin G. Torres' order entered on May 15, 2019 which denied the government's motion for pretrial detention of the defendant, BILL K. KAPRI, a/k/a DIEUSON OCTAVE, a/k/a "KODAK BLACK," and set conditions of his pretrial release. The government files this appeal on both grounds that the defendant is a danger to the community and that there are no conditions of release which will reasonably assure the appearance of the defendant at trial.

I.      PROCEDURAL HISTORY

On May 9, 2019, a federal grand jury sitting in the Southern District of Florida returned a 2-count indictment charging the defendant with making a false statement in connection with the

1

acquisition and attempted acquisition of a firearm from a federally licensed firearms dealer, in violation of Title 18, United States Code, Section 922(a)(6).  On May 11, 2019, KAPRI was arrested in Miami, Florida.  On May 13, 2019, KAPRI made his initial appearance on the indictment before United States Magistrate Judge Edwin G. Torres.   At that time, the government requested the defendant be detained pending trial.   A Pre-trial detention hearing was conducted on May 15, 2019.[1]   The government proffered the basis for its request for pre-trial detention and had an agent prepared to testify under cross examination.   However, the agent did not testify and was not subject to any cross examination by defense counsel.   On May 15, 2019, Magistrate Judge Torres entered his order setting conditions of release consisting of a $500,000 personal surety bond secured by the defendant's home (which defense counsel stated is owned free and clear by the defendant) and a $50,000 corporate surety bond (with a Nebbia condition).   Additionally, Judge Torres ordered the defendant placed on house arrest with electronic monitoring and ordered the defendant to submit to drug counseling.      The government asked Judge Torres to stay his order for forty-eight (48) hours to allow the government to file this appeal.

II.      FACTS

The indictment in this case stems from the defendant going to Lou's Police Distributors, a federal firearms licensee, on two occasions for the express purpose of purchasing firearms and ammunition.  On January 25, 2019, the defendant completed ATF Form 4473 at Lou's Police Distributors in Hialeah, Florida.   The defendant made several misrepresentations on ATF Form 4473.   Those misrepresentations led to the defendant being able to purchase three firearms.   In

---

[1] A transcript of that hearing has been ordered by the government.

2

addition to the firearms, the defendant also purchased in excess of one hundred (100) rounds of ammunition and a double rifle case.  The three firearms were a Century Arms Mini Draco 7.62 x 39 Romanian pistol, a Sig MPXK9 9mm pistol, and a Sig P238 .380 pistol.  The defendant paid $669.98 for the Mini Draco, $1,940.00 for the Sig MPXK9, and $510.00 for the Sig .380.  He paid a total of $3,518.71 for the firearms, ammunition, case, and FDLE background check.

Specifically, the defendant answered "No" to the following three questions: Are you under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year? Have you ever been convicted in any court of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?  ATF Form 4473 states that a person who answers "Yes" answer to any of the above-listed questions is prohibited from purchasing or receiving a firearm.  It is now clear and evident the defendant knowingly answered those questions falsely.

A grand jury in Florence, South Carolina indicted the defendant on April 6, 2017 for Criminal Sexual Conduct, First Degree.  According to the indictment, the defendant committed a sexual battery against the victim, by using aggravated force and/or coercion, by forcibly removing her underwear, licking her vagina, and inserting his penis into her vagina without her permission and against her will.  The maximum penalty is thirty (30) years' imprisonment.  The offense is classified as a violent most serious felony under South Carolina law.  A conviction would count as two strikes under South Carolina's Three Strikes Law.  The defendant is ineligible for parole upon a conviction, and the defendant would be required to register in the sexual offender database.

3

The defendant was released after posting a $100,000 secured bond. The judge in South Carolina also ordered, "The defendant shall have no other travel restrictions placed upon him by the State of South Carolina but is expected to fully comply with any conditions of house arrest or travel restrictions ordered by his home State of Florida." The judge also ordered, "The defendant shall abide by all State and Federal laws and appear as directed by the court." The State of South Carolina indicted the defendant under the name, DIEUSON OCTAVE. In June of 2017, the defendant began the process of legally changing his name. In his petition, he listed his criminal history and included the pending Criminal Sexual Conduct charge from South Carolina. On May 2, 2018, Broward County Circuit Court Judge Stacey Schulman granted the defendant's petition, which officially changed his name to Bill K. Kapri.

In addition to the pending South Carolina indictment, the defendant has a conviction for Carjacking with a Firearm or Weapon and Robbery on November 26, 2013. The offense occurred on September 22, 2012. The defendant was fifteen (15) at the time of the offense and sixteen (16) years old when was sentenced. His sentence was a credit for time served. In addition to the aforementioned carjacking and robbery convictions, the defendant's criminal history also includes a case involving another Robbery and five (5) counts of Kidnapping. The defendant was arrested on October 14, 2015 and sentenced on August 16, 2016. While the disposition indicates a withheld adjudication, that would be an improper sentence because the defendant's sentence was 364 days in the Broward County Jail with credit for 120 days. The sentence on that second robbery case ran concurrently with a case where the defendant was arrested on April 21, 2016 (and sentenced on May 18, 2016) for Possession of a Weapon and Fleeing/Eluding the Police. Again, the defendant's disposition indicates a withheld adjudication, and his sentence was 364 days in the

4

Broward County Jail with credit for 120 days.  Even if the defendant's disposition on those two cases did include a withheld adjudication (which is highly unlikely), the carjacking and robbery conviction did not.  ATF Form 4473 does not make any distinction between juvenile and adult convictions.  In fact, ATF Form 4473 specifically asks about convictions in **any** court.

The defendant is also an unlawful user of any number of controlled substances.  The Prior Record section of the defendant's Pretrial Services Report includes eight (8) entries of arrests for the possession of controlled substances, including marijuana, amphetamine, and methamphetamine.  In addition, which will be discussed further later, the defendant was in possession of marijuana when he was encountered at the border on April 17, 2019 in New York.  The defendant purposely answered this question untruthfully.

In addition to the false answers set forth above, the defendant made another misrepresentation on ATF Form 4473 regarding his social security number.  The defendant's social security number is 593-69-xxxx.  On the ATF Form 4473 the defendant completed on January 25, 2109, however, the defendant listed his social security number as 598-63-xxxx (he listed the correct last four digits).  Between May 2, 2018 (the date of his official name change to Bill K. Kapri) and January 25, 2019, the defendant had no contact with law enforcement.  The search performed on the name and incorrect social security number provided by the defendant resulted in "No Record Found."  As a result, Lou's Police Distributors unwittingly sold the three firearms to the defendant, a prohibited person.  The defendant returned to Lou's Police Distributors on February 1, 2109 and received the three firearms and ammunition.

Count 2 of the indictment charges the defendant with making a false statement on ATF Form 4473 at Lou's Police Distributors on March 1, 2019.  The defendant attempted to purchase

5

two more firearms and several hundred rounds of ammunition. One of the firearms was a Sig MCX Rattler 300 Blackout Pistol, and the other was a Glock 43x. The Sig cost $2,598.98, and the Glock cost $459.98. During this visit to Lou's, the defendant made the same three misrepresentations as before but listed his actual social security number. Because he used his real social security number, the criminal history check identified the defendant's criminal history, and Lou's Police Distributors denied the transaction. His bill for the firearms, ammunition, sight, and FDLE background check came to $4,084.53, and the defendant left a $1,846.00 deposit.

Since the defendant illegally retrieved the three, aforementioned firearms on February 1, 2019, the defendant's conduct, substantial means, and travel make him both a danger to the community and a risk of flight. Additionally, the fact that the defendant was out on bond when he engaged in the described conduct evinces his disregard for the conditions of bond.

On March 7, 2019, a shooting took place in the Golden Acres neighborhood of Pompano Beach, Florida. The defendant grew up in this area. A rival rap artist was the intended target. Law enforcement personnel responded to the scene and found several spent casings and a loaded firearm left on scene by the shooters. The firearm was the Sig MPXK9 pistol the defendant retrieved on February 1, 2019 having paid over $2,000 for it. The firearm had a live round in the chamber and apparently jammed during the shooting. Fingerprints taken off the firearm belonged to the defendant. Witnesses indicated the shooters arrived in at least two vehicles. One of the vehicles described was a Porsche Panamera sedan. Investigation revealed the defendant rented a Porsche Panamera matching the description of the one at the scene during the shooting just days before the shooting. Investigation also revealed the Panamera the defendant rented was equipped with a GPS system. A review of the GPS system confirmed the defendant's rented Panamera was

in the Golden Acres neighborhood at the time of the shooting.  Further review of the GPS system revealed the defendant's rented Panamera proceeded to the residence of Madarrow Smith, Jr., a known associate of the defendant's, and remained there for several hours.  The defendant's rented Panamera was subsequently found abandoned with severe vehicle damage in Lauderhill, Florida.  Witnesses put the defendant at the scene as well.  The investigation into the shooting continues.

On April 17, 2019, the defendant was stopped at the United States/Canadian border at the Lewiston Bridge Port of Entry in Lewiston, New York.  The defendant was driving a Black Cadillac Escalade bearing California license plate number OKA40434.  The defendant's record label is the registered owner of the vehicle.  The vehicle is equipped with bullet resistant glass and armored panels on the side and trunk of the vehicle.  Stetson President and Madarrow Smith, Jr. were in the vehicle with the defendant.  Law enforcement personnel found a loaded Glock 45, semi-automatic pistol inside the vehicle.  The defendant had approximately 8 grams of marijuana and just over $17,000 in United States currency on his person.  A white, Porsche Panamera bearing Florida license plate number LBZF78 followed the defendant's vehicle.  Jeantony Saintmelus, Steve Grindor, and Gregory Lambert occupied the Porsche.  Law enforcement personnel found two Glock pistols and just under thirteen grams of marijuana in the glove box.  Law enforcement personnel also found the defendant's Century Arms Mini Draco pistol inside the Porsche's trunk.  The defendant is facing charges to include criminal possession of a firearm and unlawful possession of marijuana.  The defendant posted a $40,000 bond.

On Saturday, May 11, 2019, law enforcement arrested the defendant pursuant to an arrest warrant accompanying the sealed indictment in this case.  The defendant was the driver of a Lamborghini sedan stopped by law enforcement.  Between the defendant's legs, law enforcement

personnel found a loaded firearm. The defendant had in excess of $9,000 in United States currency and five pieces of jewelry valued in excess of $25,000. In addition, the defendant was wearing two pieces of jewelry valued in excess of $50,000.

The defendant has substantial means. His Pre-Trial Services Report lists his assets at over $900,000. He has access to large sums of money as exhibited in his two most recent encounters with law enforcement ($9,000 and $17,000, respectively), expensive jewelry, homes owned free and clear, and various, expensive vehicles.

The defendant has significant international travel in the past ninety (90) days. He traveled repeatedly to the Bahamas between February and April. On February 2, 2109 (the day after illegally receiving three firearms and hundreds of rounds of ammunition), the defendant traveled from Fort Lauderdale to Nassau, the Bahamas. On February 6, 2019, the defendant arrived at Fort Lauderdale/Hollywood International Airport from Nassau, the Bahamas. On March 30, 2019, the defendant crossed the United States/Mexican border at Otay Mesa, California driving a Cadillac Escalade. On April 1, 2019, the defendant arrived at Fort Lauderdale International Airport from Nassau, the Bahamas. He has been referred to secondary inspection on February 6, 2019 (Fort Lauderdale/Hollywood International Airport from Nassau because of a PAU lookout for suspicious travel), March 30, 2019 (Otay Mesa, CA due to NCIC record stating he was prohibited from purchasing/possessing a firearm), and on April 17, 2019 (Lewiston Bridge POE due to possession of firearms and marijuana).

III.     MEMORANDUM OF LAW

It is well settled that the district court conducts a *de novo* review of the government's request for pre-trial detention. United States v. King, 849 F.2d 485, 490 (11th Cir. 1988). While a

de novo review does not require the district court to hold a de novo hearing, see United States v. Gaviria, 828 F.2d 667, 668 (11th Cir. 1987), in the instant case the government is requesting that the Court consider those facts set forth above and only hold a hearing should this Court deem it necessary.

Furthermore, the return of the indictment provides the basis for establishing probable cause that the defendant committed the charged offenses. See United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990).   In order for a court to order the pre-trial detention of a defendant, the government is required to establish by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's presence at trial.  Id. 917.   The government may also independently demonstrate the need for pre-trial detention by presenting clear and convincing evidence that the defendant is a danger to the community. Id. The Eleventh Circuit, in accord with the legislative history of the pre-trial detention statute, observed that the risk that a defendant will continue to engage in criminal activity constitutes a danger to the safety of any other person or the community. United States v. King, supra., 849 F.2d at 487 n.2.

An independent review in this case clearly demonstrates the Magistrate Judge erred when he denied the Government's motion for pre-trial detention. See United States v. King, 849 F.2d 485, 490 (11th Cir. 1988).

The defendant's criminal history is substantial and violent and typically involves firearms and/or drugs.  The defendant sustained juvenile convictions for Armed Carjacking and Robbery on November 26, 2013 after resolving three, juvenile cases. One case was the armed carjacking and robbery (arrest date of September 22, 2012). The other two cases were unarmed burglaries of an unoccupied conveyance (arrest dates of May 18, 2013 and October 2, 2013, respectively).   He

9

has a second robbery disposition accompanied by five counts of kidnapping (arrest date of October 14, 2015).  He also has a possession of a weapon disposition with a fleeing and eluding police disposition (arrest date of April 21, 2016).  Both of those dispositions, from 2016, involved marijuana possession.  He has another disposition involving marijuana and drug paraphernalia (arrest date of January 8, 2016 in St. Lucie County, FL).  He has a January 23, 2016 arrest for possession of a firearm by convicted felon in Darien, Georgia.  He has two entries for failure to appear. One was on August 23, 2016 in St. Lucie County for the above-mentioned marijuana case. The other was on November 18, 2016 for a criminal sexual conduct in St. Lucie County.  He also has two entries for violating his probation.  One is on February 28, 2017, and the other one is on January 18, 2018.  He is currently facing State of Florida charges for felon in possession stemming from his February 1, 2019 and May 11, 2019 possessions of firearms.  The State of Florida has issued an arrest warrant for the defendant. The State of Carolina has moved to revoke his bond and has lodged a detainer against him with the United States Marshals.

It does not appear from the defendant's criminal history that the defendant has ever complied with the conditions of his release.  The defendant's pattern is to be arrested, get released, get arrested, get released, get arrested, get released, and so on and so on.  When the defendant was arrested on May 11, 2019 with a firearm, he was on bond in New York and South Carolina. Neither of those bonds persuaded the defendant to abstain from criminal conduct.  When the defendant was arrested on April 17, 2019, he was on bond in South Carolina.  When the defendant committed the instant crimes on January 25, 2019 and March 1, 2019, he was on bond in South Carolina.  There is simply no reason to believe, if given a bond in this matter, the defendant will conform his behavior and abide by the conditions of bond.  The United States submits there is no

10

condition or combination of conditions that will insure the defendant's appearance in court or the community's safety from the defendant, his conduct, and the conduct of his associates.  As such, the United States is seeking pre-trial detention.

WHEREFORE, the government respectfully submits this Court should reverse the decision of Magistrate Judge Torres and requests this Court enter an Order of Pretrial Detention against the defendant.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   /s/ Bruce O. Brown
BRUCE O. BROWN
Assistant U. S. Attorney
Florida Bar No. 999490
500 East Broward Blvd., Suite 700
Fort Lauderdale, Florida   33394
Telephone No.   (954) 660-5791
Email: bruce.brown2@usdoj.gov

CERTIFICATE OF SERVICE

I CERTIFY that on May 17, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Bruce O. Brown
BRUCE O. BROWN