```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                     MIAMI DIVISION

 3            CASE NUMBER 19-20273-CR-MORENO

 4
    UNITED STATES OF AMERICA,
 5
                   Plaintiff,            Courtroom 13-3
 6
      vs.                                 Miami, Florida
 7
    BILL K. KAPRI, a/k/a DIEUSON OCTAVE,   November 13, 2019
 8  a/k/a "KODAK BLACK,"

 9              Defendant.

10  ==================================================

                  SENTENCING PROCEEDINGS
11       BEFORE THE HONORABLE FEDERICO A. MORENO
                UNITED STATES DISTRICT JUDGE
12  ==================================================

13  APPEARANCES:

14  FOR THE GOVERNMENT:     BRUCE BROWN, AUSA
                            United States Attorney's Office
15                          500 East Broward Boulevard
                            7th Floor
16                          Fort Lauderdale, Florida 33301
                                           954-356-7255
17                                    Fax: 954-356-7336

18  FOR THE DEFENDANT:      BRADFORD M. COHEN, ESQ.
                            Bradford Cohen Law
19                          1132 Southeast 3rd Avenue
                            Fort Lauderdale, Florida 33316
20                                         954-523-7774
                                      Fax: 954-523-2656
21
                            FRED HADDAD, ESQ.
22                          Fred Haddad, P.A.
                            315 Southeast 7th Street
23                          Suite 301
                            Fort Lauderdale, FL 33301
24                                         954-467-6767
                                      Fax: 954-467-3599
25
```

1  **REPORTED STENOGRAPHICALLY**
   **BY:**                     **GILDA PASTOR-HERNANDEZ, RPR, FPR**
2                              Official United States Court Reporter
                               Wilkie D. Ferguson Jr. US Courthouse
3                              400 North Miami Avenue - Suite 13-3
                               Miami, Florida  33128    305-523-5118
4                              gphofficialreporter@gmail.com
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**TABLE OF CONTENTS**

Page

Special Agent Elli Bray ................................... 36

    Direct Examination by Mr. Brown ...................... 36

    Cross-Examination by Mr. Cohen ....................... 38

    Redirect Examination by Mr. Brown .................... 41

Reporter's Certificate ................................... 62

**EXHIBITS**

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

1        (The following proceedings were held at 9:54 a.m. outside

2   the presence of the defendant:)

3        THE COURT:  United States of America versus Bill Kapri,

4   also known as Dieuson Octave, also known as Kodak Black, Case

5   Number 19-20273-Criminal.

6        On behalf of the Government, who do we have?

7        MR. BROWN:  Good morning, Your Honor.  Bruce Brown on

8   behalf of the United States.

9        THE COURT:  On behalf of the defendant at the lectern,

10  who do we have?

11       MR. HADDAD:  Fred Haddad and Bradford Cohen.

12       THE COURT:  Okay.  Come to the lectern.  That way

13  you're equidistant.  I think I'm the only one who has two

14  lecterns.  I think it helps.

15       And the probation officer, please.

16       THE PROBATION OFFICER:  Good morning, Your Honor.

17  Danielle Sylvester-Pierre on behalf of U.S. Probation.

18       THE COURT:  Okay.

19     (The defendant entered the courtroom.)

20       THE COURT:  Mr. Kapri, also known as Dieuson Octave.

21       Good morning, sir.

22       THE DEFENDANT:  Good morning, sir.

23       THE COURT:  Okay.  We're here for sentencing.  I have

24  read and reviewed the Presentence Investigation Report in this

25  case and I assume, Mr. Kapri, that you have read it as well.  Am

1    I right, sir?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  All right.  The first obligation of the

4    Court, of course, is to properly calculate the guidelines.

5    After calculating the guidelines and making a decision on any

6    objections, then the next obligation of the Court is to decide

7    where within the guidelines or above the guidelines I should

8    sentence the defendant in consideration of Title 18, United

9    States Code Section 3553(a).  I have read the second addendum by

10   the probation officer, the defendant Sentencing Memorandum.

11          The probation officer says that total adjusted offense

12   level is 21, Criminal History Category III, guideline range 46

13   to 57 months imprisonment.  Probation officer recommends three

14   years and 10 months in prison.

15          Any objections to the calculation of the guidelines

16   from the Government?

17          MR. BROWN:  Your Honor, I do believe that we're going

18   to talk about some things today that may affect Mr. Kapri's

19   acceptance of responsibility.  And I know --

20          THE COURT:  Well, I don't know whether you're going to

21   talk about it.  I want to know if you have any objections.

22          MR. BROWN:  I do, Your Honor.

23          THE COURT:  I must have missed them.  When did you file

24   them?

25          MR. BROWN:  No, Your Honor, I'm looking now at this new

1   -- we don't object to the calculation.  Our objection will be to

2   the defendant receiving the three points for acceptance of

3   responsibility.

4           THE COURT:  Well, that is an objection to the

5   calculations.

6           Did the probation officer give him acceptance of

7   responsibility?

8           MR. BROWN:  Initially, she did, Your Honor, and then --

9           THE COURT:  And in the addendum she said no?

10          THE PROBATION OFFICER:  No, Your Honor, I did not.

11          THE COURT:  I missed it.  I don't know if there was a

12  third addendum.

13          MR. BROWN:  There was not, Your Honor.

14          THE PROBATION OFFICER:  No, Your Honor.

15          THE COURT:  Okay.  So you have no written objection.

16  You have an oral objection.

17          MR. BROWN:  That's correct, Your Honor.

18          THE COURT:  And you don't think he should get

19  acceptance of responsibility because?

20          MR. BROWN:  Because of new offenses that he has engaged

21  in since we were here last.

22          THE COURT:  Okay.  What is that?

23          MR. BROWN:  On October the 29th, Your Honor, the

24  defendant engaged in a physical altercation with first another

25  inmate and then with two guards at FDC.

1           THE COURT:  Why didn't you put this in paper?

2           MR. BROWN:  Judge, it is.  The probation officer --

3           THE COURT:  Oh, you did.

4           MR. BROWN:  The probation officer listed this new thing

5   in paragraph 40 -- that is between other arrests and paragraphs

6   44 through 48.  So in paragraph 48, she mentions the fight that

7   took place on October 29th, 2019.

8           THE COURT:  Okay.  Paragraph 48, it does say that.  "On

9       November 1st, this probation officer received a letter from

10      the Federal Bureau of Prisons indicating Kapri displayed

11      disruptive behavior while housed at the Federal Detention

12      Center, Miami, Florida.  Specifically, Kapri was involved in

13      a fight on October 29, 2019 with another inmate.  The unit

14      officer attempted to break up the fight when Kapri assaulted

15      the officer by striking him in the facial and groin area.

16      The officer had to be taken to the local hospital and

17      treated for minor injuries before being released.  The

18      letter indicated that the incident has been referred to the

19      Federal Bureau of Investigation for further disposition."

20          Is this going before the grand jury?  Is there going to

21  be a charge?  What do I do with that?

22          MR. BROWN:  It appears that way, Your Honor.  What

23  we're waiting on now is the medical records of the officer that

24  is referred to in paragraph 48.  The injuries are far more

25  severe.  It appears that he is going to have surgery.  Once we

Sentencing

1  get those medical records, we will then -- because the severity

2  of the injury impacts the charging decision in this case.  So

3  111 -- 18 United States Code 111(b) calls for enhanced penalties

4  depending upon the injury to the officer.  So once we get --

5          THE COURT:  Well, are you going to have a grand jury

6  indict him?  Because if you have a grand jury indict him, you

7  may get lucky and it will be assigned at random to another judge

8  and then you decide what to do with that and the defendant,

9  right?

10         MR. BROWN:  No, Your Honor.

11         THE COURT:  So you want me to consider the uncharged

12  offense.

13         MR. BROWN:  Correct, Your Honor, as it happened just --

14         THE COURT:  Okay.

15         MR. BROWN:  Yes, it just happened about 10 days ago.

16  So yes, it is currently uncharged.  That is correct.

17         THE COURT:  Okay.  Which, of course, under the law of

18  sentencing, Courts may consider both uncharged and acquitted

19  conduct in determining the appropriate sentence.  That's what

20  the Eleventh Circuit said in United States of America versus

21  Hamaker, H-a-m-a-k-e-r, 455 F.3d 1316 at Page 1336.  Sometimes

22  judges, including this judge, if not particularly this judge --

23  I'm sometimes not inclined to do that.  Acquitted conduct, I

24  can't remember ever doing that.  Although maybe once, maybe I've

25  done it, but on charged conduct.

1         There was an old State judge who said three arrests

2    equal a conviction and there's probably some wisdom to that, but

3    I've never used that rule.  Even in reduction of sentences, I

4    have not considered fights in prison because they get so

5    complicated.  So many things happen in prison.  I don't know if

6    this may be an exception because it involves a corrections

7    officer, though.

8         See, if we had just a fight in prison, you never know

9    who starts the fight.  You know, the guy who always gets the

10   flag for unsportsmanlike conduct is the guy who reacts to

11   something that has happened.  Seems to be at least the football

12   common law.  I don't know what the prison common law would be.

13   I don't know.

14        But when it involves a corrections officer -- but in

15   order to decide that, I would probably have to hear from the

16   corrections officer.  Would I hear from the inmate, too?  So I'm

17   going to have a mini trial in this case that involved lying on

18   the form in order to get guns, right?  So I'm going to decide

19   who's at fault in this fight and the extent of the injuries.

20        MR. BROWN:  What I'm suggesting, Your Honor, is that

21   this is before this Court because it's conduct that has taken

22   place since the defendant changed his plea.  And so the

23   Government thinks that that should be before this Court and the

24   Court will do with that information whatever it chooses to do,

25   but we did not --

1          THE COURT:  Well, let me hear from the defense.  So

2     what do I do about this fight?

3          MR. COHEN:  Judge --

4          THE COURT:  Use the microphone.  I can hear you fine,

5     but the court reporter uses a headset.

6          MR. COHEN:  Sorry, Judge.

7          THE COURT:  That's okay.

8          MR. COHEN:  Brad Cohen on behalf of Mr. Kapri.

9          Judge, I investigated a little bit about this incident

10    and I would agree with the Court, there is a lot more to the

11    allegation of the incident than just that --

12         THE COURT:  You would agree with the Court on which

13    part?  I said so much.

14         MR. COHEN:  So far I agree with you on everything.

15         THE COURT:  That a fight with a corrections officer

16    makes it a different thing than a fight with an inmate?

17         MR. COHEN:  It would be, Judge, the facts that I

18    understand, and just from speaking with guards at the detention

19    center, the facts that I understand are that there was an inmate

20    that was put into that pod for approximately 12 hours, which was

21    weird.  He went home the next day, this inmate, but that there

22    was an altercation between Mr. Kapri and this inmate.  The guard

23    that went to break up this fight, I think discharged Mace.  I

24    think Mace was used on both inmates and I think that's when the

25    alleged battery occurred.

1    THE COURT: Well --

2    MR. COHEN: So I don't know --

3    THE COURT: -- "alleged" probably is the word that we

4    always use, but the officer went to the hospital.

5    MR. COHEN: Yes.

6    THE COURT: I assume, right?

7    MR. BROWN: He did, Your Honor.

8    THE COURT: Okay. So he got hit by somebody.

9    MR. COHEN: Correct. So I just -- the "alleged"

10   against Mr. Kapri is the part that I'm referring to, Judge.

11   THE COURT: Okay. So your contention is the other

12   inmate hit the guard?

13   MR. COHEN: I am not sure what happened because we

14   don't have the video yet and I haven't seen the video.

15   THE COURT: Is there a video?

16   MR. COHEN: I would imagine that there is. It's in a

17   jail.

18   MR. BROWN: There is, Your Honor.

19   THE COURT: Do you have it?

20   MR. BROWN: I do not have it yet, Your Honor.

21   MR. COHEN: So --

22   THE COURT: Well, today is the sentencing.

23   MR. BROWN: That is true, Your Honor.

24   MR. COHEN: So we don't have a video of it and my

25   understanding is there is a video of it and there are a couple

1    of other things I think that were relevant in terms of the

2    conduct.  But I have represented Mr. Kapri for three or four

3    years, Judge, and I can tell you every time he goes to jail,

4    which has been a couple of times --

5            THE COURT:  That's not a good way to begin.

6            MR. COHEN:  It's not.  It's not, Judge, but he's never

7    been a violent individual while he was incarcerated.

8            THE COURT:  He mellows out like the last defendant.

9            MR. COHEN:  Very much so, Judge.  In fact, I talked to

10   many guards that were at the jail that were -- I mean, at the

11   detention center that were surprised that he was even involved

12   in an altercation because he tries to avoid it knowing that he

13   is a target at the jail.  So --

14           THE COURT:  Why is he a target at the jail?

15           MR. COHEN:  Usually individuals that have any kind of

16   notoriety, if it's good notoriety, bad notoriety, if it's

17   someone that is known for bad things, if it's someone that is

18   known for good things, it usually brings more attention to them

19   when they go to jail.  So --

20           THE COURT:  I agree with that, but do they get beat up?

21           MR. COHEN:  Some do.  Some get attacked.  Some get

22   provoked.

23           THE COURT:  So what happened in this case?

24           MR. COHEN:  That's not clear yet, Judge.  Like I said,

25   I don't know --

1       THE COURT:  But you've talked to your client.

2       MR. COHEN:  I did, but that would be --

3       THE COURT:  He has a version of it.

4       MR. COHEN:  He does.  And the version is --

5       THE COURT:  Am I going to hear the version?

6       MR. COHEN:  Well, the version is much different than

7  what the Government is presenting to you.

8       THE COURT:  Is he going to tell me what happened or

9  not?

10      MR. COHEN:  Well, the Government is threatening that

11 there's going to be an Indictment.  I don't think he's going to,

12 but I can assure you that --

13      THE COURT:  That's what I wanted to know.

14      MR. COHEN:  Yeah.  I can assure you that it's

15 different.

16      THE COURT:  Now, who's going to talk about that

17 incident if I let you?

18      MR. BROWN:  Judge, this case has been referred to the

19 FBI.  The special agent in charge of that investigation is

20 Special Agent Elli Bray.  She has taken about 10 to 12

21 interviews and she is here prepared to --

22      THE COURT:  So she's going to tell me what 10 or 12

23 people said?

24      MR. BROWN:  Yes.

25      THE COURT:  Is the other inmate -- do you agree that

1  the other inmate has been released?

2      MR. BROWN:  I do not know the other inmate has been

3  released, Your Honor.

4      THE COURT:  Okay.  But wouldn't that be a good witness?

5      MR. BROWN:  Not --

6      THE COURT:  I don't know if inmates are generally good

7  witnesses.

8      MR. BROWN:  Not for this --

9      THE COURT:  But, I mean, a person who participated, a

10  victim.

11      MR. BROWN:  No, this person is a victim, but what I'm

12  trying to explain to the Court is --

13      THE COURT:  How about the guard?  Where is the

14  corrections officer?

15      MR. BROWN:  The corrections officer is not back to work

16  yet.  The corrections officer is impending surgery for a hernia,

17  and we don't know when he's going to be back to work, Your

18  Honor.

19      THE COURT:  So I'm not going to hear from him, either?

20      MR. BROWN:  Not this morning, Your Honor, no.

21      THE COURT:  So how am I going to decide this?

22      MR. BROWN:  Because I have here a witness who has taken

23  testimony or taken statements from everyone that was involved.

24      THE COURT:  I know, but see, the difficulty with that

25  is -- I guess that would be enough to indict someone and have

1  probable cause.  The difficulty is he gets cross-examined, but

2  it doesn't really mean anything because he could be telling the

3  truth.  This is what 12 people told him.  If I don't hear -- I

4  probably wouldn't need 12 individuals, but if I don't hear from

5  the individuals themselves, how do I know what really happened?

6  The most important people here would be the defendant, if he

7  wanted to testify, and he hasn't given up his right to remain

8  silent as to that; the other inmate, if he wanted to testify;

9  and the corrections officer or any other person who witnessed

10  this, don't you think?  That would be the best way to decide

11  this.

12            MR. BROWN:  No, Your Honor, because --

13            THE COURT:  It would not be the best way?

14            MR. BROWN:  No, because then we would be in this mini

15  trial that you described previously and the person who has

16  talked to each of those witnesses is here and, I mean, the Court

17  can make its determination from hearing from the witness and

18  hearing her answers on cross-examination.

19            THE COURT:  All right.  What say the defense to the

20  procedure?  Mr. Haddad, see?

21            Mr. Brown, it takes two lawyers to handle you.

22            MR. HADDAD:  He's more familiar with this because he

23  has interviewed.  I was in trial.

24            THE COURT:  That's okay.  You can have as many lawyers

25  as you want.

1         MR. COHEN:  Judge, I think that, again, I would agree
2    with the Court in regard to the best evidence would be hearing
3    from those individuals that were actually involved.
4         THE COURT:  So you want me to do that?
5         MR. COHEN:  I don't think that it's possible to do that
6    today.  I don't believe that that's probably the proper way in
7    terms of heading forward.  We have an allegation.  I don't think
8    it's enough to revoke the three acceptance points and my belief
9    is that you could --
10        THE COURT:  Well, probably one.  I probably don't have
11   that much discretion.  Are you withdrawing your extra point?
12        MR. BROWN:  I would be in addition to our
13   recommendation for the low end.  All of that would be off the
14   table at this point, Your Honor.
15        THE COURT:  All right.  But the one point is
16   discretionary for the prosecutor.
17        MR. COHEN:  It is, Judge.
18        THE COURT:  So if he wants to withdraw it, I probably
19   can't do anything about it.
20        MR. COHEN:  I understand.
21        THE COURT:  For the other two points -- there is case
22   law, of course, that says -- it doesn't say it like this, but
23   says if you mess up while you're awaiting sentencing, you lose
24   your acceptance of responsibility.  You acknowledge that.
25        MR. COHEN:  I think there is case law that says that,

1  Judge, yes.

2          THE COURT:  Yes.  So the issue is, did he mess up?  I

3  mean, I hate to talk so crassly, though I'm sure other things

4  that are worse have been heard by other people, but that's what

5  it is.

6          So you have an objection to the Government's request to

7  take the two levels off for acceptance of responsibility?

8          MR. COHEN:  I do, Judge.

9          THE COURT:  Any other objection to the guideline

10  calculation?

11          MR. HADDAD:  I filed objection --

12          THE COURT:  You did.

13          MR. HADDAD:  -- that it could be a level 20 as opposed

14  to a level 22 as the base offense level in that the supervisor

15  alleged that or asserted that Mr. Kapri had sustained a felony

16  conviction for a robbery.  I provided the Court several cases --

17  two cases, really, out of the Eleventh Circuit that held that

18  under Florida law and under Federal law now a withhold of

19  adjudication is not a conviction for purposes of Federal

20  calculations, and I provided both cases to the Court.

21          THE COURT:  United States versus Clarke, 822 F.3d 1213,

22  Eleventh Circuit, 2016.

23          MR. HADDAD:  Yes, sir.

24          THE COURT:  And the probation officer provided an older

25  case, United States versus Elliot, 732 F.3d 1307, Eleventh

1    Circuit, 2013, and the probation officer, of course, referred to

2    these issues that you're raising in the addendum, right?

3              MR. HADDAD:  Yes, sir.  But I also filed United States

4    versus James --

5              THE COURT:  Yeah.

6              MR. HADDAD:  -- which is a 2019 case which holds the

7    same thing.  In fact, it found that it was a --

8              THE COURT:  You say that it overrules Elliot?

9              MR. HADDAD:  I'm sorry?

10             THE COURT:  That it overrules Elliot.

11             MR. HADDAD:  It pretty much said that, yeah.

12             THE COURT:  Well, is it pretty much?  You know when you

13   look up cites, they have all kinds of signals that say whether

14   you get a red flag or not.  They have in between.  They have all

15   kinds of things like that.  I'm not a stickler for blue book or

16   flags or anything like that.  As long as I understand what's

17   going on, it's enough for me.

18             What is the Government's position on this objection

19   that you're aware of?

20             MR. BROWN:  Judge, Clarke and James have nothing to do

21   with the matter before us.  Clarke and James specifically refer

22   to the felony conviction in regard to a 922(g).  Obviously, we

23   know that.  We didn't charge him with 922(g).  In fact, we

24   didn't charge him with one of his lies about being a convicted

25   felon.

1        THE COURT:  The reason you didn't charge him with that

2   is precisely because of the law.

3        MR. BROWN:  Because of what Clarke and James say.  What

4   this --

5        THE COURT:  So he's better off having been charged with

6   making a false statement to get the gun because that's less

7   serious than getting a gun as a convicted felon.  True?

8        MR. BROWN:  But the issue here is whether or not that

9   withhold of adjudication is still calculated and the case law is

10  clear on that.  Clarke and James didn't do anything about that.

11  In fact, Clarke and James only talk in the context of 922(g).

12  The case that the probation officer cited is the controlling

13  case now as it relates to whether or not a withhold conviction

14  can be counted in this calculation.

15       THE COURT:  Okay.  That's the legal dispute we have,

16  right?

17       MR. BROWN:  Yes.  And I would just add, Your Honor,

18  that one of the cases that is in Elliot is a cite -- they

19  reference to a case called United States versus Fernandez which

20  is found at 234 F.3d 1345, and in that case, the Eleventh

21  Circuit was good enough to frame it like this:

22       On Page 1346 the Court says, "This case presents this

23       question:  Whether a plea of nolo contendere, where withhold

24       adjudication has been upheld, qualifies as a conviction for

25       purposes of United States Sentencing Guidelines Section

1      2K2.1.  The answer is 'yes'."

2          Nothing has disturbed that.  James and Clarke doesn't

3  disturb that.  The guidelines themselves refer to if it is

4  counted under 4A1.1, it counts under 2K2.1.

5          THE COURT:  If you're right, and you probably are, but

6  I don't know yet -- I haven't made up my mind -- But if you're

7  right, you would agree that it seems a little inconsistent to

8  use it for one purpose and not for another.

9          MR. BROWN:  It's not inconsistent at all.  In fact --

10         THE COURT:  At all?

11         MR. BROWN:  No, because James and Clarke explain that.

12 And so what Congress did in reference to charging a 922(g) is

13 922(g) looks back at the relevant State law; and what Elliot and

14 Fernandez talk about is when you're talking about the Sentencing

15 Guidelines, Federal law controls Federal guidelines.  So that's

16 what the difference is.

17         THE COURT:  What say the defense?

18         MR. HADDAD:  I submit to the Court exactly what it says

19 here.  It was included that he had a conviction and that's why

20 it was a level 22.  I submit he did not have a prior Florida

21 conviction, and that makes it a level 20.  I think the law is

22 clear.  The Eleventh Circuit said --

23         THE COURT:  The law couldn't be so clear if you had

24 these different points of view.

25         MR. HADDAD:  Well --

```
 1              THE COURT:  The law is clear when the Eleventh Circuit
 2    speaks.
 3              MR. HADDAD:  Yes, I understand that, and the law, it
 4    has to be interpreted by this Court.
 5              THE COURT:  Okay.  Not yet, anyway.
 6              All right.  Now, any other objection other than -- we
 7    have a dispute of the offense level 20 versus 22.  We have a
 8    dispute on the acceptance of responsibility two levels.  Any
 9    other objection?
10              MR. HADDAD:  Yeah, everything else was correct.
11              THE COURT:  All right.  Assuming I were to adopt the
12    Presentence Investigation Report, what would be the Government's
13    position as to the sentence?
14              MR. BROWN:  Judge, if --
15              THE COURT:  It's 46 to 57 months if I agree with you,
16    and I'm going to ask you if I disagree with you and were to take
17    away the two-level enhancement -- the two-level downward
18    adjustment for acceptance of responsibility, tell me what you
19    want me to do.  What sentence are you seeking under any of the
20    circumstances?
21              MR. BROWN:  96 months, Your Honor.
22              THE COURT:  96 months.  Okay.  That would be with a
23    guideline -- if he doesn't get the two levels for acceptance of
24    responsibility, he goes up to 23 and the guideline range then,
25    according to you, in Criminal History Category III is -- do I
```

1  have this right, 57/71?

2           MR. BROWN:  He's a 23?

3           THE COURT:  Well, wouldn't it be?

4           THE PROBATION OFFICER:  Your Honor, if you take away

5  acceptance of responsibility, his total offense level will be

6  24.

7           THE COURT:  24 because of the other.  63 to 78 months.

8           MR. BROWN:  That's correct.

9           THE COURT:  So what the Government is seeking is a

10  guideline range of 63 to 78 months.  And you want me to go above

11  the guidelines?

12           MR. BROWN:  I do, Your Honor.

13           THE COURT:  Because of the fight?

14           MR. BROWN:  Because of the severity of the fight and

15  the circumstances surrounding that fight, yes, Your Honor.

16           THE COURT:  Okay.  Now, from the defense perspective,

17  in the light most favorable to you, if I give him acceptance of

18  responsibility -- I think there are people talking and you're

19  welcome to do that.  There is a wonderful lobby outside and a

20  cafe downstairs, too.  You're welcome to have coffee over there

21  and chat if you want, but not here, unless you're a lawyer

22  speaking to the Court.  Thanks.

23           According to the defense, if I don't take away the

24  acceptance of responsibility, then we have the two options of

25  the offense level 20 or 22.  So it's either offense level 21 or

1   19.   True?

2          MR. COHEN:   True.

3          MR. HADDAD:   True.

4          THE COURT:   If it's 19, it's 37 to 46 months.   If it's

5   21, it's 46 to 57 months.   What's your recommendation?

6          MR. HADDAD:   I'll let Brad.

7          MR. COHEN:   Judge, I would ask the Court to find level

8   19.   Originally, the agreement was between the Government and

9   myself and Mr. Haddad to recommend the bottom of the guidelines

10   which was 37 months.   I understand that the circumstances have

11   changed because of the allegations that were made against the

12   defendant.

13          THE COURT:   So what do I do with that?   What do I do

14   with the fight?

15          MR. COHEN:   Here's the thing, Judge:   I don't want the

16   Court to remove the points.   Certainly, you can consider the

17   allegations, but I would weigh the allegations in regard to what

18   happens in jail and the information that I found out about and,

19   not only that --

20          THE COURT:   Well, what happens in jail should not

21   include beating up a corrections officer --

22          MR. COHEN:   Absolutely not, Judge.

23          THE COURT:   -- so he needs surgery.

24          MR. COHEN:   I agree.   But in looking at that, Judge, I

25   would ask the Court --

1        THE COURT:  I mean, it probably shouldn't include -- I

2   don't want to be misinterpreted -- beating up another inmate.

3        MR. COHEN:  Of course not.  And again, we don't know

4   the details of the altercation, but I would ask the Court to

5   weigh that with what the Court knows currently.  Also, I filed a

6   memorandum of sentencing outlining some things of the defendant,

7   obviously, some of them under 3553, and I would ask you to weigh

8   those things, Judge.  And maybe --

9        THE COURT:  And to give him what?

10       Are you allowed to ask me for specific time?

11       MR. COHEN:  I would ask for the 37 months.  I think

12   it's really a sentence that is fair in light of -- if you look

13   at his prior criminal history, one of the incidents that he's

14   getting two additional points for that puts him actually to a

15   Category III criminal history, one of them --

16       THE COURT:  Is marijuana.

17       MR. COHEN:  Correct.

18       THE COURT:  Yeah, I was going to mention that, and I've

19   done it in other cases.  I am not in favor of marijuana, as I

20   have said repeatedly.  I'm probably one -- I was the minority of

21   the Florida voters who voted against the marijuana even for

22   medicinal purposes for all kinds of problems that we're going to

23   have; driving under the influence, the health hazards, et

24   cetera.  But I do think getting two criminal history points for

25   smoking pot is less, it should count less than, for example,

1  getting into a fight in a jail with a corrections officer.  Do
2  you agree with that, Mr. Brown?
3          MR. BROWN:  Are you asking me if I think the fight is
4  more serious?
5          THE COURT:  Of course.  Yes.  But I said it in a --
6  yes.
7          MR. BROWN:  Sure, sure, sure.
8          THE COURT:  Okay.  And what do you think about getting
9  two points for marijuana?
10          MR. BROWN:  Judge, I think the guidelines are what the
11  guidelines are.
12          THE COURT:  I know, but this is why judges have
13  discretion and it makes it harder, but I think it makes it
14  fairer.  In other words, it seems like federally, certainly in
15  the last administration, they weren't even prosecuting marijuana
16  in certain states.  Now, I don't know what's happening with that
17  and it's kind of messed up.
18          But I have in the past with other defendants kind of
19  taken away, either through a downward variance or outright not
20  including in the criminal history category -- and actually, I'm
21  thinking about it, you know, obviously, judges think about a
22  sentencing before we get on the bench.  They probably don't talk
23  as much as I do, I suspect, and I was thinking that the Criminal
24  History Category III is probably overrepresented because of the
25  marijuana thing.

1          By the same token, I would ask the defense the pending

2   charges of rape in South Carolina and the others are, in my

3   view, if he's found guilty of that, more serious.  And once

4   again, a judge can consider at sentencing acquitted conduct.  So

5   certainly, I could consider charged conduct that is still

6   outstanding on a warrant.

7          So these are the difficult things, but it's been

8   sitting around South Carolina for a long time which kind of

9   befuddles me, and that's why I took him into custody, primarily.

10          So we've got all these balancing things.

11          MR. COHEN:  And that's the thing, Judge.  So if we were

12   to discount that and say that really it's slightly

13   overrepresented and he was a Category II, then he would be at

14   19, he would be 33 to 41.  And that's why I think 37 is fair,

15   because --

16          THE COURT:  But then I've got the fight and then I've

17   got these arrests.

18          MR. COHEN:  I understand, Judge.  And Judge, you know,

19   when I looked --

20          THE COURT:  What's going to happen to that?

21          MR. COHEN:  The arrests in South Carolina?

22          THE COURT:  Yeah.  That's a big one.

23          MR. COHEN:  I think it's going to resolve.  I believe

24   it's going to resolve favorably for the defendant.  I can't

25   represent --

1      THE COURT:  What does that mean?  I know lawyers always

2  talk like that and I always wonder, does that mean a jury is

3  going to find him not guilty?  Is it going to be dropped?  Is

4  the victim going to say it was consensual or I don't want that

5  hassle; I don't want to go up?  I mean, I don't know what that

6  means.

7      MR. COHEN:  I'm not representing him in South Carolina,

8  but my understanding is the attorney that is representing him in

9  South Carolina has said that he doesn't believe it's going to be

10  going to a trial, but it's going to be resolved favorably.  You

11  know, I can't -- South Carolina has got its own thing going.

12  And I believe that that defense attorney has had multiple

13  conversations and also has done interviews with witnesses.

14      THE COURT:  Oh, my goodness.

15      MR. COHEN:  So I think that --

16      THE COURT:  I don't want to hear from those witnesses

17  here in this false statement --

18      MR. COHEN:  I understand.

19      THE COURT:  -- in your view.

20      MR. COHEN:  I mean, I would be happy to present some of

21  those witnesses because they're pretty good.  Some of those

22  witnesses were good, but I don't think that's relevant, Judge.

23  I think --

24      THE COURT:  Is the Government seeking for me to

25  consider those?

1    MR. BROWN:  Consider the --

2    THE COURT:  South Carolina case.

3    MR. BROWN:  I think it's all for your consideration.

4    THE COURT:  I know, but how do I judge that?

5    MR. BROWN:  I mean, I think when we look at the

6  totality of these guidelines -- and I understand the Court's

7  position.  You look at the marijuana and he gets two points for

8  that, and you're like, man, that seems like that's a lot for

9  marijuana.

10    THE COURT:  Oh, it is.  No question about it.

11    MR. BROWN:  But then you look at the two robberies and

12  he gets zero points and one point.

13    THE COURT:  Because he was what -- when he was 15?

14    MR. BROWN:  One he was 15.  One he was 18.  So --

15    THE COURT:  That's probably why he gets zero.

16  15-year-olds do stupid things.

17    MR. BROWN:  No, but, I mean, the one at 18, the robbery

18  and the false imprisonment.  Now, for whatever reason, he only

19  got one point for that.  So some might say, well, how do you get

20  one point for robbery and four counts of false imprisonment and

21  two points for marijuana?

22    THE COURT:  And that's when judges come in and kind of

23  even things out.  As long as the judge explains himself, he's

24  got a pretty good chance of being affirmed by the Court of

25  Appeals.

 1          MR. BROWN:  Sure.  All I'm saying is that usually this

 2   evening out doesn't mean that you look at the robbery and add

 3   more points to that.  It's that you look at the marijuana and

 4   take points away.

 5          THE COURT:  Well, I've done both of those.

 6          MR. BROWN:  I am just saying that in this instance,

 7   that there's a whole lot to look at as it relates to this

 8   particular defendant, Your Honor.  And so that's why I don't

 9   argue with the -- I wasn't saying anything about the two points

10   because, I mean, I'm looking at these other things and I'm like,

11   man, how does he only get a point for that?  But we are where we

12   are with the guidelines, Your Honor.

13          THE COURT:  What's going to happen if we finish with

14   the sentencing today -- but I'm going to give you a chance to

15   talk while I do another hearing, and I'll hear from the FBI

16   agent and from the defendant.

17          But the issue is what you all want me to consider and

18   what impact is this going to have on the pending investigation

19   if he's going to be indicted by the grand jury and then he is

20   going to have this case and then the other case is going to be

21   resolved favorably or unfavorably or in between in front of a

22   much wiser judge in another courtroom.  That doesn't mean I

23   cannot consider it.  But if I consider it, if I consider it and

24   enhance his sentence because of it, does it mean that you will

25   not pursue the case or you will still pursue the case?

1        MR. BROWN:  Judge, I don't think one has anything to do
2   with the other.
3        THE COURT:  Okay.
4        MR. BROWN:  And there's no way I would stand in front
5   of this Court and represent that if you give us a great deal on
6   this one, then we won't --
7        THE COURT:  Okay.  I'm not saying that.  I just want to
8   know.
9        MR. BROWN:  Today would be a bad day for any talk of
10  quid pro quo.  So I don't want to be accused of that at all.  So
11  I want to be very clear that that is not what I'm saying, Your
12  Honor.  I am not saying that.  Not saying that.
13       THE COURT:  No, but the reason I was asking that is,
14  obviously, if you want me to consider that, the FBI agent
15  testifying is not as strong of a statement as witnesses
16  testifying because the agent just got that information from
17  somebody else and, also, the defendant not testifying about the
18  fight, then I don't get to hear his version unless he wants to.
19  He probably has a Fifth Amendment privilege on that, especially
20  since he may be indicted.
21       So what I wanted to do is focus on what you all want to
22  do.  We're going to proceed with the sentencing because I don't
23  think -- I think 70 days is always sufficient time to prepare
24  for sentencing and "delays have dangerous ends," Shakespeare
25  wrote, and I think things don't improve with age.  Only Bordeaux

1   wine does.

2         So what we're going to do is we're going to proceed.

3   How we're going to proceed, I'm not sure, but I'm going to let

4   the defense lawyers discuss with his client, with your client,

5   with their client what he wants to say for sentencing.

6         I'll hear -- the FBI agent is going to talk for how

7   long?

8         MR. BROWN:  Judge, my questioning of her won't take

9   more than 10 minutes.

10        THE COURT:  Okay.  Then we'll see what the cross is and

11  then I'll hear from the defendant and then you'll all argue what

12  you think is right.  I'll hear from the probation officer as to

13  -- what do you think I should do as far as the sentence?

14        THE PROBATION OFFICER:  Your Honor, we are recommending

15  the bottom of the guidelines.

16        THE COURT:  Whatever they are?

17        THE PROBATION OFFICER:  Yes, Your Honor.

18        THE COURT:  Whether it's 90 months, 70 months, 40

19  months, 30 months?

20        THE PROBATION OFFICER:  The bottom of the guidelines.

21        THE COURT:  Okay.  So we know her position.  And then

22  I'll tell you what I think after I hear you all.  How's that?

23  Is that fair?

24        MR. COHEN:  Yes, Judge.

25        MR. BROWN:  Yes, Your Honor.

 1          THE COURT:  Okay.  So let me do a guilty plea to

 2   accommodate the prosecutor who has to get back to Fort

 3   Lauderdale while you all talk.

 4          MR. COHEN:  Judge, there was one other thing.  We filed

 5   two letters this morning.  I brought copies with me, but I have

 6   three letters of --

 7          THE COURT:  I'll read them.  Give them to me.  I'll

 8   read them.  Sure.  They say he's a good guy.

 9          So he makes what, a million and a half a year?

10          MR. COHEN:  What did you say, Judge?

11          THE COURT:  He makes a million and a half a year?

12          MR. COHEN:  When he is not in jail, sure, yes.  He does

13   all right.

14          THE COURT:  Okay.  All right.

15          MR. COHEN:  Thank you, Judge.

16          THE COURT:  All right.  Have a seat.  Talk with your

17   lawyers about this important decision, about the fight in

18   particular and what you want to do.

19          We'll be in recess for just a few minutes on this case.

20        (Other matters were heard, after which of the following

21   proceedings were held at 10:55 a.m.:)

22          THE COURT:  Okay.  We've got Mr. Kapri.  He can be

23   seated there.

24          You're ready to call the agent?  You're going to ask

25   him questions or is he going to give a recitation?

1          MR. BROWN:  Judge, I can ask her questions or I can

2     proffer.  However you want me to do it, Your Honor.

3          THE COURT:  No, no.  Let's put her on.  She's here,

4     right?

5          MR. BROWN:  There were seven witnesses, Your Honor.  I

6     said 12.  They interviewed seven.

7          THE COURT:  That's okay.

8          MR. BROWN:  Your Honor, at this time the Government

9     calls Special Agent Elli Bray from the Federal Bureau --

10         THE COURT:  We're back on Kapri.  Everybody is present

11    who previously announced.

12         All right.  You know what?  Why don't you use the

13    lectern?

14         THE WITNESS:  Yes, sir.

15         THE COURT:  You know why?  That way you won't think it

16    will last as long.

17         Raise your right hand.

18      SPECIAL AGENT ELLI BRAY, GOVERNMENT'S WITNESS, SWORN.

19         THE WITNESS:  I do.

20         THE COURT:  Tell me your name, please.

21         THE WITNESS:  Elli Bray, E-l-l-i, B-r-a-y.

22         THE COURT:  I almost was going to ask you for your age,

23    but it's not an appropriate question.  We only ask defendants

24    that.

25    BY THE COURT:

1  Q.  Okay.  You investigated this fight and this altercation?

2  A.  Yes.

3  Q.  Tell me who you talked to and what they said.  Did you talk

4  to the corrections officer who's the victim of the fight?

5  A.  Yes, Your Honor.  I reviewed some videotape, interviewed

6  four corrections officers, and then my colleague who was with me

7  interviewed three inmates who were witnesses, and I --

8  Q.  Okay.  Tell me what you saw on the video.

9  A.  The first portion of the videotape does not cover the

10 altercation.  It was focused in another direction, but then the

11 video camera is moved, and at that point you see the victim

12 guard and the inmate Kapri involved in a physical altercation.

13 Q.  Okay.  Tell me what that means, they're involved in an

14 altercation.

15 A.  They were entangled, the two of them.  And when you slow

16 down the camera at different points, you can see Kapri's hands

17 near the guard's face and near his groin area and then you see

18 that --

19 Q.  Okay.  How do you know it's Kapri?

20 A.  Well, the camera continues and you see other officers

21 respond and he's placed in handcuffs and then the video

22 continues and there is a video of him in the medical area

23 receiving treatment, a close-up on his face.

24 Q.  Kapri?

25 A.  That's correct, Your Honor.

1   Q.  Where is the other inmate at that time?  So there's no

2   question in your mind that it was him and not the other inmate?

3   A.  Yes, based on the video and the interview of all the other

4   persons.

5   Q.  Tell me the interview with the corrections officer.  What

6   did he say to you?

7   A.  He said that he was approaching inmate Kapri and other

8   inmates that were gathered in inmate Kapri's cell because there

9   were too many persons in the cell at the time; told them to

10   disperse; could tell that inmate Kapri was agitated and started

11   to come towards him, and another inmate grabbed inmate Kapri to

12   restrain him from approaching the guard.  At that point --

13   Q.  He was approaching the guard, not the inmate?

14   A.  That's correct.  And the inmate, it appeared, was trying to

15   restrain him.  And then Kapri reacted to that inmate and they

16   began a physical altercation at which point the officer deployed

17   OC spray.  The other inmate headed up the stairs away from the

18   guard and inmate Kapri charged the guard.

19   Q.  All right.  And the other witnesses are corrections officers

20   who saw this?

21   A.  No, the other witnesses are three inmates that saw this and

22   all say that they believe inmate Kapri was under the influence

23   of drugs and that he was acting agitated and two of the inmates

24   say the same thing, that the other inmate attempted to restrain

25   inmate Kapri from approaching the guard and then two inmates did

1    see him assaulting the guard, to include scratching his face.

2          THE COURT:  Any questions, Mr. Brown?

3                      DIRECT EXAMINATION

4    BY MR. BROWN:

5    Q.   How many officers actually were involved physically with

6    Mr. Kapri?  I know you spoke of the victim, the one who ended up

7    going to the hospital.  Were there any other officers who came

8    into physical contact or that Mr. Kapri came into physical

9    contact with?

10   A.   Yes.  The second officer who responded attempted to assist

11   the first officer in restraining inmate Kapri.  He was at some

12   point kneed in the groin area and then I don't believe that he

13   was placed into handcuffs until the third or fourth officer

14   responded.  And by that time, they were all on the ground.  But

15   no other officers had any physical contact with him except the

16   first two other than to be placing him in handcuffs.

17         THE COURT:  Was the defendant tested for drugs?

18         THE WITNESS:  Yes.  My understanding that there are

19   numerous new drugs coming into FDC that do not show up on the

20   tests.  So the test results are negative, but the inmates as

21   well as all of the guards as well as my impressions by watching

22   the medical video would suggest that he was under the influence

23   of substances.

24         THE COURT:  All right.  Any questions that anybody

25   wants to ask?

1          MR. BROWN:  Your Honor, one final question.

2          THE COURT:  Go ahead.  Go ahead.

3   BY MR. BROWN:

4   Q.  In the interviews with the inmates, was part of the reason

5   for them gathering in Mr. Kapri's cell that they were trying to

6   help him with his physical condition, that according to them,

7   was because of the controlled substances?

8   A.  Yes.  They were giving him milk because they thought that

9   might help him and his behavior because he was becoming

10  agitated.

11         MR. BROWN:  I don't have any further questions.  Thank

12  you.

13         THE COURT:  You want to yield the lectern to the loyal

14  opposition?

15         MR. BROWN:  Absolutely.

16         THE COURT:  Cross-examination.

17         MR. COHEN:  Thank you, Judge.

18         THE COURT:  Now, is it better or worse if your client

19  is under the influence of something?

20         MR. COHEN:  Let me get to that.

21         THE COURT:  No, but what do you think?  Is it better

22  that he got into a fight with a corrections officer because he

23  was under the influence of something, or is it worse not to be

24  under the influence and to smack a correction officer?  What do

25  you think?

 1          MR. COHEN:  I think if you're lucid and you have

 2   knowledge of what's going on, I think it's a lot worse than if

 3   you were under the influence of a drug.

 4          THE COURT:  I think most people would agree.

 5   Certainly, the inmates who allegedly tried to restrain him would

 6   agree.  Okay.

 7          MR. COHEN:  Thank you, Judge.

 8          THE COURT:  Do you want to ask her questions in any

 9   event?

10          MR. COHEN:  Just one.

11          THE COURT:  You can ask as many as you want.  I'm not

12   limiting you.

13          MR. COHEN:  All right.  Well, maybe I'll ask a few.

14                        CROSS-EXAMINATION

15   BY MR. COHEN:

16   Q.  Agent, when you interviewed the other inmates, were any of

17   those inmates involved in an altercation with Mr. Kapri prior to

18   the video showing the altercation with the officer?

19   A.  Not that I'm aware of.

20   Q.  All of them denied it?

21   A.  That they were involved in an altercation?

22   Q.  That any of them were involved in an altercation with

23   Mr. Kapri.

24   A.  Correct.  They -- yes.

25   Q.  And prior to this altercation --

```
 1          THE COURT:  "Correct, yes."  I'm not understanding what
 2    that was.
 3          THE WITNESS:  None of the three inmates we interviewed
 4    reported having any altercation with Mr. Kapri.
 5          THE COURT:  Thank you.
 6    BY MR. COHEN:
 7    Q.  Were any of those inmates released the next day?
 8    A.  No, that inmate has not been interviewed.
 9    Q.  Okay.  That inmate was not interviewed, correct?
10    A.  That's correct.
11    Q.  Is that inmate a known gang member?
12    A.  I don't know his criminal history.
13    Q.  Do you know what his name is?
14    A.  I don't recall off the top of my head.  I do have it in my
15    reports.
16    Q.  So you don't know his name.  You don't know his background.
17    Do you know why he was in prison, in the detention center?
18    A.  I don't know.  I know he was about to be released.  That's
19    why he was transferred there.
20    Q.  He was transferred to Mr. Kapri's pod temporarily, correct?
21    A.  Correct.
22    Q.  Was that about 12 hours?
23    A.  That could have been.
24    Q.  Did anyone see on the video -- do you see Mr. Kapri drinking
25    a cup of coffee before this whole thing kind of escalates?
```

1  A.  I did not see that, but I didn't watch the entire day.  So

2  that could be accurate.

3  Q.  So how long of the video did you watch?

4  A.  I want to say a few minutes.  I am not sure.  I would be

5  lying if I said the exact amount of time.

6  Q.  How long is the video that you obtained?

7  A.  I do not have it in my possession.  They're responding to a

8  subpoena.  I just observed it, watched it.

9  Q.  Okay.  So you only watched those couple of minutes.  You

10 didn't see what happened before or what happened after?

11 A.  Correct.  And the video doesn't always show the entire area.

12 They focus the video on where I believe the most people are

13 gathered or if there is an incident.

14 Q.  Did you see injuries to Mr. Kapri's face?

15 A.  Yes, he had --

16 Q.  What injuries did he have?

17 A.  I saw that there was -- it appeared that he had blood on his

18 face.

19 Q.  Did it also appear to you that he had one big knot on his

20 eye?

21 A.  It did look like there was an injury around his eye area,

22 yes.

23 Q.  When the officers went into the cell or the area that you

24 observed, before the altercation with Mr. Kapri, did you see

25 them deploy their Mace?

A.   That's not on the camera.  As I said, the camera was turned
when other officers became alerted to the fight, and at that
point you only see the one victim officer and Mr. Kapri engaged
in an altercation.  The other inmates you see as the camera
turns, they're coming up the stairs.

Q.   And your interviews, though, are that they deployed their
Mace first before they --

A.   One officer is the only person who was in the area and that
he deployed his OC spray, yes.

Q.   And then the altercation between Mr. Kapri and the officer
takes place after that Mace is deployed, correct?

A.   That's correct.

          MR. COHEN:  Nothing further, Judge.

          THE COURT:  Thank you, agent.

          Any redirect?  I assume none, right?

          MR. BROWN:  Very brief, Your Honor.

                    REDIRECT EXAMINATION

BY MR. BROWN:

Q.   You indicated that there were injuries or lacerations to
Mr. Kapri's face.  What about the victim officer?

A.   Yes.  He had injuries to his face.  He reports being punched
twice in the groin and that Mr. Kapri was grabbing his testicles
and he couldn't get him to release.  So he has scratch marks to
his face.  They were still visible a week later.

          MR. BROWN:  Okay.  All right.  Thank you.  I don't have

1    any further questions.

2          THE COURT:  Thank you, agent.

3          All right.  Any other evidence according to the

4    Government?

5          MR. BROWN:  No, Your Honor.

6          THE COURT:  Government rests.

7          Okay.  Any evidence from the defense?

8          MR. COHEN:  No, sir.

9          THE COURT:  Okay.  Then have the defendant come to the

10   lectern.

11         Anything else that the Government wishes to say before

12   I impose sentence and make findings on the objections?

13         MR. BROWN:  Yes, Your Honor.

14         Your Honor, you have standing before you today an

15   incredibly talented young man, and he just has surrounded

16   himself with a group of people who enable him to do things that

17   he probably shouldn't be engaged in.  Prior to about two weeks

18   ago, we were prepared to come in, and while we disagreed on what

19   the low end of the guidelines were, we were prepared to

20   recommend to this Court what would have been the low end of the

21   guidelines which, depending on how this Court rules, would have

22   been either 46 to 57 months or 37 to 46 months.

23         But since that time, we now know that this defendant,

24   based upon the unobjected to paragraphs in the Plea Agreement --

25   I mean, in the PSI, 44 through 48, we see numerous incidents

1    resulting in discipline while he has been at FDC, and then

2    finally it escalates to a point where this defendant, who,

3    according to all parties involved, appeared to be under the

4    influence of something, charged at a corrections officer,

5    punched that corrections officer several times in the face,

6    first got into an altercation with an inmate trying to stop him

7    from doing so, and then ultimately grabbed and pulled at this

8    officer's testicles to the point where his abdomen and

9    intestinal wall were breached.  He just doesn't get it.  And so

10   the notion now that we continue to find ways to try to help this

11   defendant to get it, and the notion being that the way we do

12   that is by lessening the amount of time that he spends

13   incarcerated, humbly, I think, do this defendant a disservice.

14          What this defendant needs, Your Honor, is -- he needs a

15   reset.  If he gets the amount of time that the defense is asking

16   for, he cannot avail himself to the RDAP program.  He clearly

17   has a controlled substance issue.  We need to address that.  I

18   think he needs to address that, and I think this Court needs to

19   give him the opportunity to do so.

20          The Government is asking for 96 months, and I

21   understand that's a lot of time, but this defendant is a young

22   man.  The defendant will still be a young man, but this sentence

23   we think takes into consideration all of the 3553(a) factors.

24   Not only the seriousness of the offense for which he's been

25   charged, but to truly deter this defendant from continuing to

1  behave in this manner.  He just -- he just keeps getting break

2  after break after break.  He's got two pending cases.  He's got

3  the rape charge in South Carolina.  He's got a gun charge in New

4  York.  He now has what could amount to a third pending case as a

5  result of this altercation.  I cannot imagine why we keep giving

6  this young man these breaks.

7        I think it is time for us to exercise some tough love

8  in this case, give this defendant and force this defendant to

9  take some responsibility and accountability for his actions and

10  his misactions.  He has not done that yet.  He has not been

11  forced to do that yet, and if we continue to give him the

12  benefit of the doubt, if we continue to give him break after

13  break after break, I don't see how and when he ever takes these

14  things seriously.

15        So the Government suggests, Your Honor, that he should

16  not get any reduction for acceptance of responsibility.  The

17  Government submits that the case law is clear that he begins at

18  a 22.  He then goes up to 24 because of the number of weapons

19  involved, and without acceptance at a Criminal History Category

20  III, that would put him at 63 to 78 months.  And so the

21  Government's recommendation would be an upward variance to 96

22  months and I think that addresses all of the 3553(a) factors and

23  I thank this Court for its time and its consideration in

24  allowing the Government to put forth Special Agent Bray.

25        Thank you very much, Your Honor.

1          THE COURT:  All right.  What say defense counsel?

2          MR. COHEN:  Judge, I want to direct you to the motion

3    that I filed in the Sentencing Memorandum and also in addition

4    to the letters that I filed as well.  I actually -- what I did

5    was, Judge, I handpicked the letters that I thought were most

6    relevant because I've gotten many, many letters of support from

7    individuals that know Mr. Kapri, but I felt like his charitable

8    works were something that the Court should take note of.

9          The reason why I say that, Judge, is because some of

10   his charitable works are not even noted by the press or by

11   anybody.  It's just things that Mr. Kapri would direct me or his

12   financial advisor to just do.

13         So Mr. Kapri didn't even want me to bring up some of

14   the things that he does for charity, but in regard to fallen

15   officers, he has donated anonymously to -- I don't even know the

16   number of individuals that had young children that died while in

17   the line of duty.  Only one was really reported on and that was

18   an officer in South Carolina that he paid for his funeral

19   expenses when he died in the line of duty.

20         The Bill Kapri that I know calls me on random dates and

21   says, hey, I just read something in the newspaper about

22   Christmas gifts that were stolen.  I want all the Christmas

23   gifts replaced and just do it anonymously, and I would go ahead

24   and arrange those things.  There are different things in the

25   newspaper and in articles that actually picked up on some of the

1  things that he did with Christmas donations, with Jack & Jill in

2  Broward.  They're building a new facility to take care of

3  underprivileged kids whose parents have two or three jobs like

4  his mom had when he was growing up.  He donated $10,000 and then

5  he found out that the kids that were going there didn't have

6  enough T-shirts, underwear and socks, and he directed me to buy

7  about two years' worth of underwear, socks and T-shirts to

8  donate to Jack & Jill in Fort Lauderdale.

9          He's done Thanksgiving giveaways.  He's done other

10  Christmas replacement gifts to kids that didn't have.

11          He read something in the newspaper about a child in

12  Texas -- and I talked to her on the phone several times -- that

13  was just raising -- she was raising notebooks and pencils for

14  everyone in her school, so that they would all have notebooks

15  and pencils for the upcoming year and I think there was 7600

16  school kids and she was doing it at like 100 pencils at a time.

17  She was in the newspaper or on AOL.  And Mr. Kapri directed me

18  to make sure that every kid in that county in Texas had

19  notebooks and pencils for the rest of the year.  So I think it

20  was 7600 notebooks and pencils.

21          So I understand that Mr. Kapri is not perfect.  Believe

22  me, I get it.  I've read his PSI many times.  In fact, I've

23  represented him on the majority of those cases in terms of

24  violation of probation and the original charge, and I do want to

25  correct something, Judge.

1            The prosecutor brought up the fact of that robbery

2    charge and I alluded to this originally when we discussed the

3    robbery charge when we were in front of you taking the plea and

4    we discussed it a little bit.

5            But the probable cause affidavit for that robbery

6    charge was essentially that Mr. Kapri went around his

7    neighborhood -- he found out his mom's house got broken into and

8    she was assaulted.  He found out these five kids who did the

9    assault and the home invasion.  He found them roaming around the

10   streets, put them all in a car, took their phones, drove them to

11   his mom's house and made them apologize to his mom.  Out of

12   those five defendants that he allegedly, quote-unquote,

13   kidnapped, three of them are currently in custody currently with

14   Broward County, two on multiple home invasion robberies, one on

15   two first degree murders with a home invasion robbery, and those

16   were three of the five.  I think the other two, maybe they got

17   scared straight because they're not in custody currently.

18           So when we look at that robbery charge that the

19   prosecution says, hey, you know, he got a break on that with its

20   one point, if I represented him originally on that robbery

21   charge, I would have never taken -- that wasn't a case that

22   should have been pled, to be quite honest with the Court.

23           He does -- I think in the PSI, it indicates that he has

24   some history of drug use.  I think he would benefit from the

25   RDAP program, but the RDAP program is available to him with the

1    37 months.  The 36 months is the minimum that you qualify for

2    the RDAP program, but, quite honestly, if the Government is

3    concerned for him and wants, quote-unquote, tough love, then

4    they wouldn't be bringing this new case because then he would

5    qualify for the RDAP program.  I think with the new case, the

6    possibility is that he doesn't qualify with the RDAP program,

7    and he would not benefit from the RDAP program.  He might get

8    into some other drug program while in jail, but I don't know if

9    that's possible with a new Federal charge.

10          In fact, I think if he gets a new Federal charge for

11   what they're intending on charging him with, I don't even think

12   he will go to a facility that would have RDAP.  I think he would

13   probably go to a medium because of the actual charge.  So,

14   Judge, I understand it's a weighing circumstance.

15          And also, by the way, Judge, when we pled, you

16   originally said, hey, three firearms, what's that about?  I

17   actually went the extra distance because I knew you were

18   concerned about how many firearms were involved, which obviously

19   is a two-point enhancement, and we hired a lie detector expert,

20   go into the jail.  I attached his CV to the motion and he asked

21   him flat-out if he purchased these weapons for self-defense.

22   The answer was yes and it was 99.9 percent truthful.  I won't

23   tell you all the questions he asked him, but he was 99.9 percent

24   truthful on all the questions that were asked of him.

25          So I understand the charge.  I get it.  I understand

1    his past.  But like I said, Judge, with any defendant -- and I

2    know that you always look at this.  With any defendant, there's

3    more to the story than just what's on paper.  And the good that

4    he's done that is on paper, and that is not on paper, should

5    count for something.  I'm not saying, you know, discount him to

6    20 months.  I'm not saying give him 15 months.  I'm saying I

7    think that it's fair -- that 37 months is fair.

8        In light of the charitable works that he's done, that

9    is aside from any -- there was no pending charge.  He wasn't

10   trying to do something to make himself look good.  Like when I

11   tell you he does things anonymously, I'm underplaying the things

12   he does anonymously because he gave me specific instruction not

13   to discuss some of those things.  So I would ask the Court to

14   take into consideration the things that I did say on paper.  I

15   would ask the Court to take into consideration some of the

16   anonymous donations that he's made because I can verify that he

17   has made several donations to fallen officers and their families

18   in fashioning a sentence.

19       I understand that the Government says that he's getting

20   breaks.  These were not breaks.  These were incidents where the

21   proof was not there.  I mean, there were some cases that got

22   dismissed just because the case law was on point and it just

23   wasn't provable.  So it's not that he kept getting breaks.  This

24   is going to be the longest sentence that he's going to hopefully

25   get in his career, in his life.  And I think 36 months, 37

1   months sends it home, you know, for lying on a firearms document

2   that he was otherwise federally permitted to own a firearm.

3         If he went to Bob Smith and said, hey, do you want to

4   make a deal for a firearm, federally he would have been okay.

5   This is really -- it's not a case of where a felon lied on a

6   firearm form to get a firearm.  This is a case where strictly

7   the only thing that was really the lie was that he had a pending

8   charge in South Carolina that would affect interstate commerce,

9   and that's the question on the form.  The instructions are, do

10  you have a current pending case or Indictment or charge that

11  would affect interstate commerce?  And he checked no and the

12  answer was yes.

13        I also put in my motion -- and again, not to mitigate

14  his guilty plea, because he took a guilty plea, but I also put

15  in my motion that prior to even filling out these forms, he took

16  a gun course and passed a gun course and got a certificate.

17  Those are not the actions of someone that would intentionally

18  mislead.

19        Again, I'm not negating the guilt -- the guilty plea is

20  the guilty plea.  He wanted to take a guilty plea on day number

21  two because he just wanted to do it and get it over with.  I was

22  the one who kept saying, hey, let's wait and let's get some more

23  information and that's when I did the investigation and found

24  out that he took a gun course, got a gun certificate, got the

25  advice of a prior -- I believe it was a BSO guard that is no

1   longer BSO or a Miami-Dade guard in regard to his background and

2   whether or not he's qualified for a firearm.  Again, I'm not

3   making any excuses.  I'm just presenting that to the Court as

4   mitigation that the Court could look at.

5        Again, he took a guilty plea.  He's admitting he took a

6   guilty plea.  He wants to talk to the Court and express, you

7   know, about his guilty plea, but I think a 37-month sentence,

8   Judge, sends it home that this was something that should not

9   have occurred.  This is something that is obviously very

10  serious.  This is not State court.  It's Federal court.  He's

11  probably going to do the majority of that time because I don't

12  think with a new charge he's going to be afforded a lot of

13  programs that he could do to lessen his time.

14       And by the way, one other thing, Judge.  While he was

15  in his pod, I spoke with an individual who lost his sight.  He

16  couldn't see, and Mr. Kapri volunteered to be his guide.  He

17  essentially was leading him around the jail and helping him get

18  accustomed to being in jail.  Obviously, being blind was a

19  detriment to him, but I was able to speak with him one day and

20  he obviously didn't write a letter, but he asserted to me and

21  stated that Mr. Kapri has helped him since he's been in jail and

22  he thought that he was a big help and he was very complimentary

23  of Mr. Kapri and how he behaved in jail.

24       That's it, Judge.

25       THE COURT:  You want to add anything, Mr. Haddad?

1          MR. HADDAD:  No, sir.

2          THE COURT:  Okay.  Mr. Kapri, it's your turn.  What do

3   you want to say about yourself, your past, the fight, or

4   anything else?

5          THE DEFENDANT:  I want to say thank you for your time

6   today, Judge.

7          THE COURT:  Oh, I get paid for it.  So don't worry

8   about that, not by the hour, but I get paid.

9          THE DEFENDANT:  I'm more than grateful for this

10  opportunity to address you personally in regard to the situation

11  I put myself in and I'm sorry for the actions that led me to

12  where I'm standing and I'm truly sorry if the situation have

13  brought any humiliation to the Government.  That was never my

14  intent, but I do take full responsibility for my mishap.

15         THE COURT:  You want to tell me anything about the

16  fight and the use of drugs or not?

17         THE DEFENDANT:  I mean, sir --

18         THE COURT:  Your lawyers are all nervous.  They're all

19  shaking their head no.

20         THE DEFENDANT:  I couldn't even understand what the

21  lady was saying.  I mean, they don't even show the video when I

22  was fighting the inmate.  I was pepper sprayed.  That's not even

23  cool.

24         THE COURT:  Hold on.  The lawyers are worried.

25         THE DEFENDANT:  But I'm being honest here.  It's like

1    it's no winning when you fight a CO.  They know that's not even

2    my character.

3          But anyway, back to what I was saying, sir, I have made

4    a lot of mistakes in my life and I have hurt a lot of people who

5    care about me.  Those mistakes have brought me to here where I

6    am standing at today.

7          THE COURT:  You know, someone once told me -- because

8    I'm from a different generation.  So you know, we probably think

9    differently about tattoos.  But someone told me that a tattoo

10    reflects what someone really feels.  Sometimes they change their

11    mind and then that would be a good business to get into in the

12    future, removal of tattoos.  But you've got one on your right

13    hand and one on your left hand, right?

14          THE DEFENDANT:  Yeah.

15          THE COURT:  And I think the one on your left hand --

16    what does it say?

17          THE DEFENDANT:  On my left hand?

18          THE COURT:  Yes.

19          THE DEFENDANT:  Golden.  No.  On my left hand, it say

20    acres.

21          THE COURT:  Okay.

22          MR. COHEN:  You mean on his cheeks, Judge?

23          THE COURT:  No, I thought it was on the hand.

24          MR. COHEN:  Golden acres are on his hands.

25          THE COURT:  What do you have on your hands?

1            THE DEFENDANT:  On the --

2            THE COURT:  On the fingers.

3            THE DEFENDANT:  On my knuckles?

4            THE COURT:  Yeah.

5            THE DEFENDANT:  On my knuckles it say Kill Bill.

6  That's my name.

7            THE COURT:  That's your name, Kill Bill?

8            THE DEFENDANT:  My name is Bill, but it rhyme with

9  Kill.

10            THE COURT:  But Bill is on the other hand.  So the Kill

11  is your nickname?

12            THE DEFENDANT:  Yeah.

13            THE COURT:  Well, the only reason I was asking that is

14  usually something like that kind of --

15            MR. COHEN:  It was a movie.

16            THE COURT:  -- takes the attention -- draws the

17  attention of a judge, particularly with all these guns running

18  around.  Not just in this case, but in other cases.

19            THE DEFENDANT:  It's the acronym like Kodak Black, KB.

20  So it's KB again.  It's nothing like that.

21            THE COURT:  Okay.  All right.  I just wanted to make

22  sure.  I read everything and it's good for me to know.

23            Okay.  Anything else you want to say?

24            THE DEFENDANT:  I want to say the way I have hurt my

25  family and my mom and them and my son, it's only something I

1  could make up for when I'm able to do so.  And I want to say

2  thank you to everybody who supported me during my hard times,

3  the people who are in court today.  And I had got a lot of

4  letters of love and support and encouragement during my hard

5  time, and it made me feel good to know that I have affected

6  people in a positive way, even though I had made some decisions

7  I'm not proud of making.

8       And essentially, I want to say thank you to the

9  prosecutor, too, and the probation officer, you know, for coming

10  to an agreement stating that they are not seeking anything

11  higher than 37 months, even though --

12       THE COURT:  He changed his mind now, though.

13       THE DEFENDANT:  Yeah, right.  Even though -- even if

14  like it's not the best resolution, but at least that's the

15  bottom of my guidelines, and at the end of the day, he got a job

16  to do.  So it's no hard feelings.  There's no hard feelings.

17       THE COURT:  Well, he's asking for more than eight

18  years.

19       THE DEFENDANT:  Well, it still -- it still no hard

20  feelings because he got a job to do.

21       THE COURT:  Okay.

22       THE DEFENDANT:  But what was even more nerve-racking

23  these last 80 days since I last saw you, I knew it was only you

24  at the end of the day to decide my fate.  And I'm not hesitant

25  to say that it's a scary feeling when someone got your life and

1   your future in their hands and it all determines on how they

2   perceive you as or how they feel about you or however they feel

3   today.  What's even more scary is you don't like guns.

4            THE COURT:  Well, you know, it's not whether I like

5   guns or not.  It's that -- because our country is very divided

6   about that, but it's just that one of the guns was used for a

7   very bad thing, you know.  Remember that.  But that's not what

8   you're being sentenced for.  I know some people think -- you

9   know, I like the explanation of the prior offense involving the

10  neighborhood, and I understand that.

11           Okay.  Having heard from all parties and having read

12  the Presentence Investigation Report, there were a couple of

13  objections.  The defense is objecting to the base offense level

14  for the reason stated by the probation officer, and with the

15  case of United States versus Clarke and James that I previously

16  referred as well as Elliot, I am going to overrule that

17  objection and find that the base offense level was appropriately

18  calculated.  I could, of course, reserve to myself whether that

19  would be a good reason to vary downwards because of that.  So

20  I'll put that in a corner and explain later.

21           Then we have the fight.  And because your lawyers are

22  suggesting to you, I suspect that you not talk about the fight

23  except the little you've said, it is obvious that the conclusion

24  that I have to make is that something was happening to you,

25  whether it was due to something you took or some mental health

1   issue; and I do think that when one does that under the

2   influence, it's to be taken into consideration.

3          So the issue is whether I should take away the

4   acceptance of responsibility downward adjustment, the three

5   levels.  The one level, the Government is the one based on

6   timeliness -- I don't think if the Government decides to

7   withdraw the one level pursuant to Section 3E1.1(b) on paragraph

8   24, I don't think I have the power to prevent that.  But the two

9   levels that you got on 3E1.1(a) on paragraph 23, I do have the

10  power to keep that two-level downward adjustment.  And it is

11  true that under the law, if you do something bad after you have

12  pled guilty, I could take it away because you're not truly

13  accepting responsibility.  But after hearing the agent's

14  testimony, which I find credible, and the witnesses she has

15  interviewed, I don't think it would be fair in the exercise of

16  my discretion to take away the two-level downward adjustment

17  because you did accept responsibility for what you did in this

18  case.  What impact that's going to have on any further

19  investigation is really not something that I can consider.

20         So I'm going to keep the two-level downward adjustment,

21  keep the base offense level that the Government recommends.  If

22  the Government insists on taking away the one level, that means

23  your adjusted offense level becomes 22, right, instead of 21?

24         THE PROBATION OFFICER:  The adjusted offense level,

25  Your Honor?

1          THE COURT:  Eventually with the acceptance of --

2    pardon?

3          THE PROBATION OFFICER:  The adjusted offense level

4    would remain at a 24.  The total offense level would be reduced

5    to a 22.

6          THE COURT:  That's what I meant.  The last offense

7    level would be 22.

8          So then I have your prior record which includes

9    Criminal History Category III.  And even though I know that you

10   take marijuana, as you have mentioned -- it's in the Presentence

11   Investigation Report -- to mellow out, and based on the fights,

12   maybe that's the appropriate substance instead of substances

13   that make you go a little crazy, but I do think it's overly

14   represented.  So what I'm going to do is whether I consider it

15   as a Criminal History Category II, whether it's a downward

16   variance or not, I am going to take away the brunt of the

17   two-point enhancement and consider you as I would if you were in

18   Criminal History Category II.

19         The difficulty, of course, to me are the two pending

20   cases, and I've already mentioned, the cases Hamaker from the

21   Eleventh Circuit and others that allow me to consider that.

22   Those cases, both the possession of a loaded gun in Niagara and

23   also the rape are much more serious, but, of course, you're

24   still presumed innocent with that and it's always difficult for

25   a judge to figure out what to do with that.  What I normally do

1    with people who are young is I actually give defendants a

2    downward variance because I think young people do stupid things,

3    and I give them a break for that.  The problem, of course, is

4    you've been doing stupid things as a young man since you were

5    15.  So I can't keep doing it.

6            So what I'm going to do with the two pending cases,

7    it's going to prevent me in the exercise of my discretion to

8    give you a downward variance which I would normally do for

9    someone who's young because you've been sentenced as a youthful

10   offender before.  So you've already been given a break.

11           So since I find that under Criminal History Category

12   II, your guidelines with the two-level acceptance of

13   responsibility -- I think the guideline sentence would, now that

14   I've raised it to 22, would still be 46 to 57 months which is

15   the same as originally suggested; am I right?

16           THE PROBATION OFFICER:  Yes, Your Honor.

17           THE COURT:  I know it's a convoluted way of getting

18   there, but the bottom line is that the guidelines are the same,

19   which kind of makes it easier in case it gets to the Court of

20   Appeals, except for the dispute that you have on whether it's 20

21   or 22, the base offense level which I have found for the

22   Government.  So I'm going to give you the bottom of the

23   guidelines.  I'm not going to accept the Government's suggestion

24   to give you more than that because of the fight.

25           I will tell you -- this is not an order, but a

1    suggestion -- since you've been generous and what people do -- I

2    think people's generosity should be considered unless the money

3    that you make is through fraud and then, of course, I wouldn't

4    consider that.  In this case it's through your talent, which I

5    probably wouldn't recognize as much as other people would, but

6    you've been generous and the two letters go for that.  But my

7    suggestion would be that you continue to be generous and direct

8    that generosity in case the corrections officer has lost pay or

9    has a deductible for his insurance or something like that.

10           MR. COHEN:  Judge, I already reached out.

11           THE COURT:  Oh, you've done that already?

12           See, you've got smart lawyers, but you should be smart.

13   That would be where I would give not in exchange for anything

14   else, just because it seems like it's the right thing to do, but

15   that's not part of this.  So I'm not considering one way or

16   another the fight.  It's just not enough for me to give you an

17   enhancement for this.  I leave it up to the investigation and

18   the victim of that to decide what to do.  So I'm going to give

19   you 46 months.

20           It's the judgment of this Court that you, Bill Kapri,

21   also known as Dieuson Octave, be committed to the custody of the

22   Bureau of Prisons for 46 months.  Upon release from

23   imprisonment, you'll be placed on supervised release for three

24   years.  I do think you should participate in drug treatment

25   while in prison and while you're out and the sentence will be

1  concurrent on both Counts 1 and 2 and there's a $200 special

2  assessment.

3          Now that I have given the sentence, are there any

4  objections, other than the length of the hearing, to the

5  calculation of the guidelines and the rulings from the Court,

6  from the Government?

7          MR. BROWN:  We would keep our objection to the

8  acceptance of responsibility, Your Honor.

9          THE COURT:  Preserved.  From the defense?

10          MR. HADDAD:  Our objection to the guideline calculation

11  as argued.

12          THE COURT:  Preserved.  Only I have the good graces to

13  have both sides have a chance to appeal and they have the right

14  to do that and you have the right to do that regarding the

15  calculations.  But that Notice of Appeal has to be filed within

16  14 days.

17          Do you understand, Mr. Kapri?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Are you satisfied with your lawyers?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Okay.  Okay.  Thank you.  Have as best of a

22  day as you can under the circumstances.

23          MR. BROWN:  Thank you, Your Honor.

24          THE COURT:  Okay.  Sorry it took so long.  You could

25  probably catch that train.

1          MR. BROWN:  With Mr. Bardfeld?

2          THE COURT:  Yeah.  Tell him, see, it took long, but not

3    as long as he thought and maybe other people came from Broward

4    and they can take the same train.  If you listen to music,

5    though, use your headsets because some people may not like it as

6    much as others.

7       (The hearing concluded at 11:38 a.m.:)

8

9                    C E R T I F I C A T E

10         I hereby certify that the foregoing is an accurate

11   transcription of proceedings in the above-entitled matter.

12

13   _____          _____
         DATE                 GILDA PASTOR-HERNANDEZ, RPR, FPR
14                            Official United States Court Reporter
                             Wilkie D. Ferguson Jr. U.S. Courthouse
15                            400 North Miami Avenue, Suite 13-3
                             Miami, Florida  33128    305.523.5118
16                            gphofficialreporter@gmail.com

17

18

19

20

21

22

23

24

25

**A**

abdomen 43:8
able 51:19 55:1
about 5:18,21 8:15 10:2,9 13:16
    13:20 14:13 16:19 18:24
    19:10 20:14,14 23:18 25:8,21
    25:21 28:10 29:9 30:17 32:17
    32:17 39:18,22 41:20 42:17
    45:21 46:7,11 48:16,18 51:7
    52:3,8,15 53:5,9 56:2,6,22
above 5:7 22:10
above-entitled 62:11
Absolutely 23:22 37:15
accept 57:17 59:23
acceptance 5:19 6:2,6,19 16:8
    16:24 17:7 21:8,18,23 22:5,17
    22:24 44:16,19 57:4 58:1
    59:12 61:8
accepting 57:13
accommodate 32:2
according 21:25 22:23 37:6 42:3
    43:3
accountability 44:9
accurate 40:2 62:10
accused 30:10
accustomed 51:18
acknowledge 16:24
acquitted 8:18,23 26:4
acres 53:20,24
acronym 54:19
acting 35:23
actions 44:9 50:17 52:11
actual 48:13
actually 16:3 24:14 25:20 36:5
    45:4,25 48:17 59:1
add 19:17 29:2 51:25
addendum 5:9 6:9,12 18:2
addition 16:12 45:3
additional 24:14
address 43:17,18 52:10
addresses 44:22
adjudication 17:19 19:9,24
adjusted 5:11 57:23,24 58:3
adjustment 21:18 57:4,10,16,20
administration 25:15
admitting 51:5
adopt 21:11
advice 50:25
advisor 45:12
affect 5:18 50:8,11
affected 55:5
affidavit 47:5
affirmed 28:24
afforded 51:12
after 5:5 31:22 32:20 40:10
    41:11 44:2,2,12,13 57:11,13
again 16:1 24:3 26:4 50:13,19
    51:2,5 54:20
against 11:10 23:11 24:21
age 30:25 33:22
agent 3:4 13:19,20 29:16 30:14
    30:16 31:6 32:24 33:9,18
    38:16 41:14 42:2 44:24
agent's 57:13
agitated 35:10,23 37:10
ago 8:15 42:18
agree 10:10,12,14 12:20 13:25
    16:1 20:7 21:15 23:24 25:2
    38:4,6
agreement 23:8 42:24 55:10
ahead 37:2,2 45:23
alerted 41:2
allegation 10:11 16:7
allegations 23:11,17,17
alleged 10:25 11:3,9 17:15
allegedly 38:5 47:12
allow 58:21
allowed 24:10
allowing 44:24

alluded 47:2
almost 33:22
already 58:20 59:10 60:10,11
altercation 6:24 10:22 12:12
    24:4 34:1,10,12,14 35:16
    38:17,18,21,22,2 5 39:4 40:24
    41:4,10 43:6 44:5
Although 8:24
always 9:9 11:4 27:1,2 30:23
    40:11 49:2 58:24
Amendment 30:19
America 1:4 4:3 8:20
amount 40:5 43:12,15 44:4
announced 33:11
anonymous 49:16
anonymously 45:15,23 49:11,12
another 6:24 7:13 8:7 20:8 24:2
    29:15,22 34:10 35:11 60:16
answer 20:1 48:22 50:12
answers 15:18
anybody 36:24 45:11
anyone 39:24
anything 15:2 16:19 18:16 19:10
    29:9 30:1 42:11 51:25 52:4,15
    54:23 55:10 60:13
anyway 21:5 53:3
AOL 46:17
apologize 47:11
appeal 61:13,15
Appeals 28:25 59:20
appear 40:19
APPEARANCES 1:13
appeared 35:14 40:17 43:3
appears 7:22,25
approaching 35:7,12,13,25
appropriate 8:19 33:23 58:12
appropriately 56:17
approximately 10:20
area 7:15 34:17,22 36:12 40:11
    40:21,23 41:8
argue 29:9 31:11
argued 61:11
around 26:8 40:21 47:6,9 51:17
    54:18
arrange 45:24
arrests 7:5 9:1 26:17,21
articles 45:25
aside 49:9
asked 48:20,23,24
asking 25:3 30:13 43:15,20
    54:13 55:17
assault 47:9
assaulted 7:14 47:8
assaulting 36:1
asserted 17:15 51:20
assessment 61:2
assigned 8:7
assist 36:10
assume 4:25 11:6 41:15
Assuming 21:11
assure 13:12,14
attached 48:20
attacked 12:21
attempted 7:14 35:24 36:10
attention 12:18 54:16,17
attorney 27:8,12
Attorney's 1:14
AUSA 1:14
avail 43:16
available 47:25
Avenue 1:19 2:3 62:15
avoid 12:12
awaiting 16:23
aware 18:19 38:19
away 21:17 22:4,23 25:19 29:4
    35:17 57:3,12,16,22 58:16
a.m 4:1 32:21 62:7
a/k/a 1:7,8

**B**

back 14:15,17 20:13 32:2 33:10
    53:3
background 39:16 51:1
bad 12:16,17 30:9 56:7 57:11
balancing 26:10
Bardfeld 62:1
base 17:14 56:13,17 57:21 59:21
based 35:3 42:24 57:5 58:11
battery 10:25
beat 12:20
beating 23:21 24:2
became 41:2
becomes 57:23
becoming 37:9
before 1:11 7:17,20 9:21,23
    18:21 25:22 39:25 40:10,24
    41:7 42:11,14 59:10
befuddles 26:9
began 35:16
begin 12:5
begins 44:17
behalf 4:6,8,9,17 10:8
behave 44:1
behaved 51:23
behavior 7:11 37:9
being 7:17 18:24 28:24 41:21
    43:11 51:18,18 52:25 56:8
belief 16:8
believe 5:17 16:6 26:23 27:9,12
    35:22 36:12 40:12 46:21
    50:25
bench 25:22
benefit 44:12 47:24 48:7
best 15:10,13 16:2 55:14 61:21
better 19:5 37:18,21
between 7:5 10:22 18:14 23:8
    29:21 41:10
big 26:22 40:19 51:22
Bill 1:7 4:3 45:20 54:5,7,8,10
    60:20
bit 10:9 47:4
Black 1:8 4:4 54:19
blind 51:18
blood 40:17
blue 18:15
Bob 50:3
book 18:15
Bordeaux 30:25
both 8:18 10:24 17:20 29:5
    58:22 61:1,13
bottom 23:9 31:15,20 55:15
    59:18,22
Boulevard 1:15
Brad 10:8 23:6
Bradford 1:18,18 4:11
Bray 3:4 13:20 33:9,18,21 44:24
breached 43:9
break 7:14 10:23 44:1,2,2,12,13
    44:13 47:19 59:3,10
breaks 44:6 49:20,20,23
brief 41:16
bring 45:13
bringing 48:4
brings 12:18
broken 47:7
brought 32:5 47:1 52:13 53:5
Broward 1:15 46:2 47:14 62:3
Brown 1:14 3:5,7 4:7,7 5:17,22
    5:25 6:8,13,17,20,23 7:2,4,22
    8:10,13,15 9:20 11:7,18,20,23
    13:18,24 14:2,5,8,11,15,20,22
    15:12,14,2,1 16:12 18:20 19:3
    19:8,17 20:9,11 21:14,21,22
    22:8,12,14 25:2,3,7,10 28:1,3
    28:5,11,14,17 29:1,6 30:1,4,9
    31:8,25 33:1,5,8 36:2,4 37:1,3
    37:11,15 41:16,18,25 52:5,13
    61:7,23 62:1

**C**

C 62:9,9
cafe 22:20
calculate 5:4
calculated 19:9 56:18
calculating 5:5
calculation 5:15 6:1 17:10 19:14
    61:5,10
calculations 6:5 17:20 61:15
call 32:24
called 19:19
calls 8:3 33:9 45:20
came 36:7,8 62:3
camera 34:11,16,20 41:1,1,4
car 47:10
care 46:2 53:5
career 49:25
Carolina 26:2,8,21 27:7,9,11
    28:2 44:3 45:18 50:8
case 1:3 4:4,25 8:2 9:17 12:23
    13:18 16:21,25 17:25 18:6
    19:9,12,13,19,20,2 2 28:2
    29:20,20,25,2 5 32:19 44:4,8
    44:17 47:21 48:4,5 49:22 50:5
    50:6,10 54:18 56:15 57:18
    59:19 60:4,8
cases 17:16,17,20 19:18 24:19
    44:2 46:23 49:21 54:18 58:20
    58:20,22 59:6
catch 61:25
category 5:12 21:25 24:15 25:20
    25:24 26:13 44:19 58:9,15,18
    59:11
cause 15:1 47:5
cell 35:8,9 37:5 40:23
center 7:12 10:19 12:11 39:17
certain 25:16
certainly 23:16 25:14 26:5 38:5
certificate 3:8 50:16,24
certify 62:10
cetera 24:24
chance 28:24 29:14 61:13
change 53:10
changed 9:22 23:11 55:12
character 53:2
charge 7:21 13:19 18:23,24 19:1
    44:3,3 46:24 47:2,3,6,18,21
    48:9,10,13,2 5 49:9 50:8,10
    51:12
charged 8:25 19:5 26:5 35:18
    43:4,25
charges 26:2
charging 8:2 20:12 48:11
charitable 45:7,10 49:8
charity 45:14
chat 22:21
checked 50:11
cheeks 53:22
child 46:11
children 45:16
chooses 9:24
Christmas 45:22,22 46:1,10
Circuit 8:20 17:17,22 18:1 19:21
    20:22 21:1 58:21
circumstance 48:14
circumstances 21:20 22:15
    23:10 61:22
cite 19:18
cited 19:12
cites 18:13

**Clarke** 17:21 18:20,21 19:3,10
  19:11 20:2,11 56:15
**clear** 12:24 19:10 20:22,23 21:1
  30:11 44:17
**clearly** 43:16
**client** 13:1 31:4,4,5 37:18
**close-up** 34:23
**CO** 53:1
**Code** 5:9 8:3
**coffee** 22:20 39:25
**Cohen** 1:18,18 3:6 4:11 10:3,6,8
  10:8,14,17 11:2,5,9,13,16,21
  11:24 12:6,9,15,21,24 13:2,4
  13:6,10,14 16:1,5,17,20,25
  17:8 23:2,7,15,22,24 24:3,11
  24:17 26:11,18,21,23 27:7,15
  27:18,20 31:24 32:4,10,12,15
  37:17,20 38:1,7,10,13,15 39:6
  41:13 42:8 45:2 53:22,24
  54:15 60:10
**colleague** 34:6
**come** 4:12 28:22 35:11 42:9,18
**coming** 36:19 41:5 55:9
**commerce** 50:8,11
**committed** 60:21
**common** 9:12,12
**complicated** 9:5
**complimentary** 51:22
**concerned** 48:3,18
**concluded** 62:7
**conclusion** 56:23
**concurrent** 61:1
**condition** 37:6
**conduct** 8:19,23,25 9:10,21 12:2
  26:4,5
**Congress** 20:12
**consensual** 27:4
**consider** 8:11,18 23:16 26:4,5
  27:25 28:1 29:17,23,23,23
  30:14 57:19 58:14,17,21 60:4
**consideration** 5:8 28:3 43:23
  44:23 49:14,15 57:2
**considered** 9:4 60:2
**considering** 60:15
**contact** 36:8,9,15
**contendere** 19:23
**contention** 11:11
**CONTENTS** 3:1
**context** 19:11
**continue** 43:10 44:11,12 60:7
**continues** 34:20,22
**continuing** 43:25
**controlled** 37:7 43:17
**controlling** 19:12
**controls** 20:15
**conversations** 27:13
**convicted** 18:24 19:7
**conviction** 9:2 17:16,19 18:22
  19:13,24 20:19,21
**convoluted** 59:17
**cool** 52:23
**copies** 32:5
**corner** 56:20
**correct** 6:17 8:13,16 11:9 21:10
  22:8 24:17 34:25 35:14 38:24
  39:1,9,10,20,21 40:11 41:11
  41:12 46:25
**correction** 37:24
**corrections** 9:6,14,16 10:15
  14:14,15,16 15:9 23:21 25:1
  34:4,6 35:5,19 37:22 43:4,5
  60:8
**counsel** 45:1
**count** 24:25 49:5
**counted** 19:14 20:4
**country** 56:5
**counts** 20:4 28:20 61:1
**couple** 11:25 12:4 40:9 56:12

**course** 5:4 8:17 16:22 18:1 24:3
  25:5 50:16,16,24 56:18 58:19
  58:23 59:3 60:3
**court** 1:1 2:2 4:3,9,12,18,20,23
  5:3,4,6,20,23 6:4,9,11,15,18
  6:22 7:1,3,8 8:5,11,14,17 9:21
  9:23,24 10:1,4,5,7,10,12,12
  10:15 11:1,3,6,8,11,15,19,22
  12:5,8,14,20,23 13:1,3,5,8,13
  13:16,22,25 14:4,6,9,12,13,19
  14:21,24 15:13,16,19,24 16:2
  16:4,10,15,18,2 1 17:2,9,12,16
  17:20,21,24 18:5,8,10,12 19:1
  19:5,15,22 20:5,10,17,18,23
  21:1,4,5,11,15,22 22:3,7,9,13
  22:16,22 23:4,7,13,16,20,23
  23:25 24:1,4,5,9,16,1 8 25:5,8
  25:12 26:16,20,22 27:1,14,16
  27:19,24 28:2,4,10,13,15,22
  28:24 29:5,13 30:3,5,7,13
  31:10,16,18,2 1 32:1,7,11,14
  32:16,22 33:3,7,10,15,20,22
  33:25 36:2,17,24 37:2,13,16
  37:18,21 38:4,8,11 39:1,5
  41:14 42:2,6,9,20,21 43:18
  44:23 45:1,8 47:22 49:13,15
  51:3,4,6,10,10,2 5 52:2,7,15
  52:18,24 53:7,15,18,21,23,25
  54:2,4,7,10,13,16,21 55:3,12
  55:17,21 56:4 58:1,6 59:17,19
  60:11,20 61:5,9,12,19,21,24
  62:2,14
**Courthouse** 2:2 62:14
**courtroom** 1:5 4:19 29:22
**Courts** 8:18
**Court's** 28:6
**cover** 34:9
**crassly** 17:3
**crazy** 58:13
**credible** 57:14
**criminal** 5:12 21:25 24:13,15,24
  25:20,23 39:12 44:19 58:9,15
  58:18 59:11
**cross** 31:10
**cross-examination** 3:6 15:18
  37:16 38:14
**cross-examined** 15:1
**cup** 39:25
**current** 50:10
**currently** 8:16 24:5 47:13,13,17
**custody** 26:9 47:13,17 60:21
**CV** 48:20

**D**

**D** 2:2 62:14
**dangerous** 30:24
**Danielle** 4:17
**DATE** 62:13
**dates** 45:20
**day** 10:21 30:9 39:7 40:1 50:20
  51:19 55:15,24 61:22
**days** 8:15 30:23 55:23 61:16
**deal** 30:5 50:4
**decide** 5:6 8:8 9:15,18 14:21
  15:10 55:24 60:18
**decides** 57:6
**decision** 5:5 8:2 32:17
**decisions** 55:6
**deductible** 60:9
**defendant** 1:9,18 4:2,9,19,22 5:2
  5:8,10 6:22,24 8:8 9:22 12:8
  15:6 23:12 24:6 26:24 29:8,16
  30:17 31:11 36:17 42:9,23
  43:2,11,13,14,21,22,2 5 44:8,8
  49:1,2 52:5,9,17,20,21 53:14
  53:17,19 54:1,3,5,8,12,19,24
  55:13,19,22,22 61:18,20
**defendants** 25:18 33:23 47:12
  59:1

**defense** 10:1 15:19 20:17 22:16
  22:23 26:1 27:12 31:4 42:7
  43:15 45:1 56:13 61:9
**degree** 47:15
**delays** 30:24
**denied** 38:20
**depending** 8:4 42:21
**deploy** 40:25
**deployed** 35:16 41:6,9,11
**described** 15:15
**Description** 3:16
**details** 24:4
**detector** 48:19
**detention** 7:11 10:18 12:11
  39:17
**deter** 43:25
**determination** 15:17
**determines** 56:1
**determining** 8:19
**detriment** 51:19
**died** 45:16,19
**Dieuson** 1:7 4:4,20 60:21
**difference** 20:16
**different** 10:16 13:6,15 20:24
  34:16 45:24 53:8
**differently** 53:9
**difficult** 26:7 58:24
**difficulty** 14:24 15:1 58:19
**direct** 3:5 36:3 45:2,11 60:7
**directed** 46:6,17
**direction** 34:10
**disagree** 21:16
**disagreed** 42:18
**discharged** 10:23
**discipline** 43:1
**discount** 26:12 49:5
**discretion** 16:11 25:13 57:16
  59:7
**discretionary** 16:16
**discuss** 31:4 49:13
**discussed** 47:2,4
**dismissed** 49:22
**disperse** 35:10
**displayed** 7:10
**disposition** 7:19
**dispute** 19:15 21:7,8 59:20
**disruptive** 7:11
**disservice** 43:13
**distance** 48:17
**DISTRICT** 1:1,1,11
**disturb** 20:3
**disturbed** 20:2
**divided** 56:5
**DIVISION** 1:2
**document** 50:1
**doing** 8:24 43:7 46:16 59:4,5
**donate** 46:8
**donated** 45:15 46:4
**donations** 46:1 49:16,17
**done** 8:25 24:19 27:13 29:5
  44:10 46:9,9 49:4,8 60:11
**doubt** 44:12
**down** 34:16
**downstairs** 22:20
**downward** 21:17 25:19 57:4,10
  57:16,20 58:15 59:2,8
**downwards** 56:19
**draws** 54:16
**drinking** 39:7
**driving** 24:23
**dropped** 27:3
**drove** 47:10
**drug** 38:3 47:24 48:8 60:24
**drugs** 35:23 36:17,19 52:16
**due** 56:25
**during** 55:2,4
**duty** 45:17,19

**E**

**E** 62:9,9
**each** 15:16
**easier** 59:19
**East** 1:15
**eight** 55:17
**either** 14:19 22:25 25:19 42:22
**Eleventh** 8:20 17:17,22,25 19:20
  20:22 21:1 58:21
**Elli** 3:4 13:20 33:9,18,21
**Elliot** 17:25 18:8,10 19:18 20:13
  56:16
**enable** 42:16
**encouragement** 55:4
**end** 16:13 42:19,20 55:15,24
**ended** 36:6
**ends** 30:24
**engaged** 6:20,24 41:3 42:17
**enhance** 29:24
**enhanced** 8:3
**enhancement** 21:17 48:19 58:17
  60:17
**enough** 14:25 16:8 18:17 19:21
  46:6 60:16
**entangled** 34:15
**entered** 4:19
**entire** 40:1,11
**equal** 9:2
**equidistant** 4:13
**escalates** 39:25 43:2
**especially** 30:19
**ESQ** 1:18,21
**essentially** 47:6 51:17 55:8
**et** 24:23
**even** 9:3 12:11 24:21 25:15
  28:23 45:10,13,15 48:11
  50:15 52:20,21,22 53:1 55:6
  55:11,13,13,2 2 56:3 58:9
**evening** 29:2
**event** 38:9
**Eventually** 58:1
**ever** 8:24 44:13
**every** 12:3 46:18
**everybody** 33:10 55:2
**everyone** 14:23 46:14
**everything** 10:14 21:10 54:22
**evidence** 3:15 16:2 42:3,7
**exact** 40:5
**exactly** 20:18
**Examination** 3:5,7 36:3 41:17
**example** 24:25
**except** 36:15 56:23 59:20
**exception** 9:6
**exchange** 60:13
**excuses** 51:3
**exercise** 44:7 57:15 59:7
**Exhibits** 3:14,15
**expenses** 45:19
**expert** 48:19
**explain** 14:12 20:11 56:20
**explains** 28:23
**explanation** 56:9
**express** 51:6
**extent** 9:19
**extra** 16:11 48:17
**eye** 40:20,21
**E-l-l-i** 33:21

**F**

**F** 62:9
**face** 34:17,23 36:1 40:14,18
  41:20,21,24 43:5
**facial** 7:15
**facility** 46:2 48:12
**fact** 12:9 18:7,23 19:11 20:9
  46:22 47:1 48:10
**factors** 43:23 44:22
**facts** 10:17,19
**fair** 24:12 26:14 31:23 49:7,7
  57:15

fairer 25:14
fallen 45:14 49:17
false 19:6 27:17 28:18,20
familiar 15:22
families 49:17
family 54:25
far 7:24 10:14 31:13
fashioning 49:18
fate 55:24
fault 9:19
favor 24:19
favorable 22:17
favorably 26:24 27:10 29:21
Fax 1:17,20,24
FBI 13:19 29:15 30:14 31:6
FDC 6:25 36:19 43:1
Federal 7:10,11,19 17:18,19
   20:15,15 33:9 48:9,10 51:10
federally 25:14 50:2,4
FEDERICO 1:11
feel 55:5 56:2,2
feeling 55:25
feelings 55:16,16,20
feels 53:10
felon 18:25 19:7 50:5
felony 17:15 18:22
felt 45:7
Ferguson 2:2 62:14
Fernandez 19:19 20:14
few 32:19 38:13 40:4
Fifth 30:19
fight 7:6,13,14 9:8,9,19 10:2,15
   10:16,23 22:13,14,15 23:14
   25:1,3 26:16 30:18 32:17 34:1
   34:4 37:22 41:2 52:3,16 53:1
   56:21,22 59:24 60:16
fighting 52:22
fights 9:4 58:11
figure 58:25
file 5:23
filed 17:11 18:3 24:5 32:4 45:3,4
   61:15
filling 50:15
final 37:1
finally 43:2
financial 45:12
find 23:7 27:3 43:10 56:17 57:14
   59:11
findings 42:12
fine 10:4
fingers 54:2
finish 29:13
firearm 50:2,4,6,6 51:2
firearms 48:16,18 50:1
first 5:3 6:24 34:9 36:11,16 41:7
   43:6 47:15
five 47:8,12,16
FL 1:23
flag 9:10 18:14
flags 18:16
flat-out 48:21
Floor 1:15
Florida 1:1,6,16,19 2:3 7:12
   17:18 20:20 24:21 62:15
focus 30:21 40:12
focused 34:10
following 4:1 32:20
football 9:11
force 44:8
forced 44:11
foregoing 62:10
form 9:18 50:6,9
forms 50:15
Fort 1:16,19,23 32:2 46:8
forth 44:24
forward 16:7
found 18:7 19:20 23:18 26:3
   46:5 47:7,8,9 50:23 59:21
four 12:2 28:20 34:6

fourth 36:13
FPR 2:1 62:13
frame 19:21
fraud 60:3
Fred 1:21,22 4:11
from 5:16 7:9 9:15,16 10:1,18
   14:19,23 15:4,17,17 16:3
   22:16 27:16 29:15,16 30:16
   31:11,12 33:9 35:12,17,25
   42:7 43:7,25 45:6 47:24 48:7
   49:9 53:8 56:11 58:20 60:22
   61:5,6,9 62:3
front 29:21 30:4 47:3
full 52:14
funeral 45:18
further 7:19 37:11 41:13 42:1
   57:18
future 53:12 56:1
F.3d 8:21 17:21,25 19:20

## G

gang 39:11
gathered 35:8 40:13
gathering 37:5
gave 49:12
generally 14:6
generation 53:8
generosity 60:2,8
generous 60:1,6,7
gets 9:9 15:1 28:7,12,15 43:15
   48:10 59:19
getting 19:7 24:14,24 25:1,8
   44:1 49:19,23 59:17
gifts 45:22,23 46:10
GILDA 2:1 62:13
give 6:6 22:17 24:9 29:14 30:5
   32:7,25 43:19 44:8,11,12 49:6
   59:1,3,8,22,24 60:13,16,18
giveaways 46:9
given 15:7 59:10 61:3
giving 37:8 44:5
go 12:19 22:10 27:5 37:2,2 45:23
   48:12,13,20 58:13 60:6
goes 12:3 21:24 44:18
going 5:17,20 7:20,20,25 8:5
   9:17,18 13:5,8,11,11,16,22
   14:17,19,21 18:17 21:16
   24:18,22 26:20,23,24 27:3,3,4
   27:9,10,10,1 1 29:13,14,18,19
   29:20,20 30:22 31:2,2,3,3,6
   32:24,25 33:22 36:7 38:2 46:5
   49:24,24 51:11,12 56:16
   57:18,20 58:14,16 59:6,7,22
   59:23 60:18
Golden 53:19,24
good 4:7,16,21,22 12:5,16,18
   14:4,6 19:21 27:21,22 28:24
   32:8 49:3,10 53:11 54:22 55:5
   56:19 61:12
goodness 27:14
gotten 45:6
Government 1:14 4:6 5:16 9:23
   13:7,10 22:9 23:8 27:24 33:8
   42:4,6,11 43:20 44:15,17,24
   48:2 49:19 52:13 57:5,6,21,22
   59:22 61:6
Government's 17:6 18:18 21:12
   33:18 44:21 59:23
gphofficialreporter@gmail.com
   2:4 62:16
grabbed 35:11 43:7
grabbing 41:22
graces 61:22
grand 7:20 8:5,6 29:19
grateful 52:9
great 30:5
groin 7:15 34:17 36:12 41:22
ground 36:14
group 42:16

growing 46:4
guard 10:22 11:12 14:13 34:12
   35:12,13,18,18,2 5 36:1 50:25
   51:1
guards 6:25 10:18 12:10 36:21
guard's 34:17
guess 14:25
guide 51:16
guideline 5:12 17:9 21:23,24
   22:10 59:13 61:10
guidelines 5:4,5,7,7,15 19:25
   20:3,15,15 22:11 23:9 25:10
   25:11 28:6 29:12 31:15,20
   42:19,21 55:15 59:12,18,23
   61:5
guilt 50:19
guilty 26:3 27:3 32:1 50:14,14
   50:19,20,20 51:5,6,7 57:12
gun 19:6,7 44:3 50:16,16,24,24
   58:22
guns 9:18 54:17 56:3,5,6
guy 9:9,10 32:8

## H

Haddad 1:21,22 4:11,11 15:20
   15:22 17:11,13,23 18:3,6,9,11
   20:18,25 21:3,10 23:3,6,9
   51:25 52:1 61:10
half 32:9,11
Hamaker 8:21 58:20
hand 33:17 53:13,13,15,17,19
   53:23 54:10
handcuffs 34:21 36:13,16
handle 15:21
handpicked 45:5
hands 34:16 53:24,25 56:1
happen 9:5 26:20 29:13
happened 8:13,15 9:11 11:13
   12:23 13:8 15:5 40:10,10
happening 25:16 56:24
happens 23:18,20
happy 27:20
hard 55:2,4,16,16,19
harder 25:13
hassle 27:5
hate 17:3
having 19:5 39:4 56:11,11
hazards 24:23
head 39:14 52:19
headed 35:17
heading 16:7
headset 10:5
headsets 62:5
health 24:23 56:25
hear 9:15,16 10:1,4 13:5 14:19
   15:3,4 27:16 29:15 30:18 31:6
   31:11,12,22
heard 17:4 32:20 56:11
hearing 15:17,18 16:2 29:15
   57:13 61:4 62:7
held 4:1 17:17 32:21
help 37:6,9 43:10 51:22
helped 51:21
helping 51:17
helps 4:14
her 15:18 31:8,21 33:1,3 38:8
   46:12,14
hernia 14:16
hesitant 55:24
hey 45:21 47:19 48:16 50:3,22
higher 55:11
him 6:6 7:15 8:6,6 14:19 15:3
   18:23,24 19:1 22:17 24:9,14
   26:9 27:3,7,8 32:25 34:22
   35:2,11,12,15 36:1,15,16 37:6
   37:8,9 38:5 41:23 42:16 43:6
   43:19 44:11,12,20 46:25
   47:20,25 48:3,11,21,23,24
   49:5,6 51:17,17,19,19,21 62:2

himself 28:23 42:16 43:16 49:10
hired 48:19
history 5:12 21:25 24:13,15,24
   25:20,24 39:12 44:19 47:24
   58:9,15,18 59:11
hit 11:8,12
Hold 52:24
holds 18:6
home 10:21 47:9,14,15 50:1 51:6
honest 47:22 52:25
honestly 48:2
Honor 4:7,16 5:17,22,25 6:8,10
   6:13,14,17,23 7:22 8:10,13
   9:20 11:7,18,20,23 14:3,18,20
   15:12 16:14 19:17 21:21 22:4
   22:12,15 29:8,12 30:12 31:14
   31:17,25 33:2,5,8 34:5,25
   37:1 41:16 42:5,13,14 43:14
   44:15,25 57:25 59:16 61:8,23
HONORABLE 1:11
hopefully 49:24
hospital 7:16 11:4 36:7
hour 52:8
hours 10:20 39:22
house 47:7,11
housed 7:11
How's 31:22
humbly 43:13
humiliation 52:13
hurt 53:4 54:24
H-a-m-a-k-e-r 8:21

## I

Identification 3:15
II 26:13 58:15,18 59:12
III 5:12 21:25 24:15 25:24 44:20
   58:9
imagine 11:16 44:5
impact 29:18 57:18
impacts 8:2
impending 14:16
important 15:6 32:17
impose 42:12
impressions 36:21
imprisonment 5:13 28:18,20
   60:23
improve 30:25
incarcerated 12:7 43:13
incident 7:18 10:9,11 13:17
   40:13
incidents 24:13 42:25 49:20
inclined 8:23
include 23:21 24:1 36:1
included 20:19
includes 58:8
including 8:22 25:20
inconsistent 20:7,9
incredibly 42:15
indicated 7:18 41:19
indicates 47:23
indicating 7:10
indict 8:6,6 14:25
indicted 29:19 30:20
Indictment 13:11 50:10
individual 12:7 51:15
individuals 12:15 15:4,5 16:3
   45:7,16
influence 24:23 35:22 36:22
   37:19,23,24 38:3 43:4 57:2
information 9:24 23:18 30:16
   50:23
Initially 6:8
injuries 7:17,24 9:19 40:14,16
   41:19,21
injury 8:2,4 40:21
inmate 6:25 7:13 9:16 10:16,19
   10:21,22 11:12 13:25 14:1,2
   15:8 24:2 34:12 35:1,2,7,8,10
   35:11,11,13,14,15,17,18,22,24

35:25 36:11 39:8,9,11 43:6
52:22
**inmates** 10:24 14:6 34:7 35:8,21
35:23,25 36:20 37:4 38:5,16
38:17 39:3,7 41:4
**innocent** 58:24
**insists** 57:22
**instance** 29:6
**instead** 57:23 58:12
**instruction** 49:12
**instructions** 50:9
**insurance** 60:9
**intending** 48:11
**intent** 52:14
**intentionally** 50:17
**interpreted** 21:4
**interstate** 50:8,11
**interview** 35:3,5
**interviewed** 15:23 33:6 34:5,7
38:16 39:3,8,9 57:15
**interviews** 13:21 27:13 37:4
41:6
**intestinal** 43:9
**invasion** 47:9,14,15
**investigated** 10:9 34:1
**investigation** 4:24 7:19 13:19
21:12 29:18 50:23 56:12
57:19 58:11 60:17
**involved** 7:12 9:17 12:11 14:23
16:3 34:12,13 36:5 38:17,21
38:22 43:3 44:19 48:18
**involves** 9:6,14
**involving** 56:9
**issue** 17:2 19:8 29:17 43:17 57:1
57:3
**issues** 18:2

---

**J**

**Jack** 46:1,8
**jail** 11:17 12:3,10,13,14,19
23:18,20 25:1 32:12 48:8,20
51:17,18,21,23
**James** 18:4,20,21 19:3,10,11
20:2,11 56:15
**Jill** 46:1,8
**job** 55:15,20
**jobs** 46:3
**Jr** 2:2 62:14
**judge** 1:11 7:2 8:7,22,22 9:1
10:3,6,9,17 11:10 12:3,6,9,24
13:18 16:1,17 17:1,8 18:20
21:14 23:7,15,22,24 24:8
25:10 26:4,11,18,18 27:22
28:4,23 29:22 30:1 31:8,24
32:4,10,15 33:1 37:17 38:7
41:13 45:2,5,9 46:25 48:14,15
49:1 51:8,14,24 52:6 53:22
54:17 58:25 60:10
**judges** 8:22 25:12,21 28:22
**judgment** 60:20
**jury** 7:20 8:5,6 27:2 29:19
**just** 8:13,15 9:8 10:11,18 11:9
19:17 29:6 30:7,16 32:19
38:10 40:8 42:15 43:9 44:1,1
45:11,12,21,23 46:13 49:3,22
49:22 50:21 51:3 54:18,21
56:6 60:14,16

---

**K**

**K** 1:7
**Kapri** 1:7 4:3,20,25 7:10,12,14
10:8,22 11:10 12:2 17:15
32:22 33:10 34:12,19,24 35:7
35:10,11,15,18,22,2 5 36:6,8
36:11 38:17,23 39:4,24 40:24
41:3,10,22 45:7,11,13,20
46:17,21 47:6 51:16,21,23
52:2 60:20 61:17
**Kapri's** 5:18 34:16 35:8 37:5

39:20 40:14 41:20
**KB** 54:19,20
**keep** 44:5 57:10,20,21 59:5 61:7
**keeps** 44:1
**kept** 49:23 50:22
**kid** 46:18
**kidnapped** 47:13
**kids** 46:3,5,10,16 47:8
**Kill** 54:5,7,9,10
**kind** 12:15 25:17,18 26:8 28:22
39:25 54:14 59:19
**kinds** 18:13,15 24:22
**kneed** 36:12
**knew** 48:17 55:23
**knot** 40:19
**know** 5:19,20,21 6:11 9:5,8,9,12
9:13 11:2 12:25 13:13 14:2,6
14:17,24 15:5 18:12,23 20:6
24:3 25:12,16,21 26:18 27:1,5
27:11 28:4 30:8 31:21 33:12
33:15 34:19 36:6 39:12,13,16
39:16,17,18,1 8 42:23 45:7,15
45:20 47:19 48:8 49:2,5 50:1
51:7 53:1,7,8 54:22 55:5,9
56:4,7,8,9 58:9 59:17
**knowing** 12:12
**knowledge** 38:2
**known** 4:4,4,20 12:17,18 39:11
60:21
**knows** 24:5
**knuckles** 54:3,5
**Kodak** 1:8 4:4 54:19

---

**L**

**lacerations** 41:19
**lady** 52:21
**last** 6:21 12:8 25:15 33:16 55:23
55:23 58:6
**later** 41:24 56:20
**Lauderdale** 1:16,19,23 32:3
46:8
**law** 1:18 8:17 9:12,12 16:22,25
17:18,18 19:2,9 20:13,15,21
20:23 21:1,3 44:17 49:22
57:11
**lawyer** 22:21
**lawyers** 15:21,24 27:1 31:4
32:17 52:18,24 56:21 60:12
61:19
**leading** 51:17
**least** 9:11 55:14
**leave** 60:17
**lectern** 4:9,12 33:13 37:13 42:10
**lecterns** 4:14
**led** 52:11
**left** 53:13,15,17,19
**legal** 19:15
**length** 61:4
**less** 19:6 24:25,25
**lessen** 51:13
**lessening** 43:12
**let** 10:1 13:17 23:6 31:3 32:1
37:20
**letter** 7:9,18 51:20
**letters** 32:5,6 45:4,5,6 55:4 60:6
**let's** 33:3 50:22,22
**level** 5:12 17:13,14,14 20:20,21
21:7 22:5,25,25 23:7 56:13,17
57:5,7,21,22,23,2 4 58:3,4,7
59:21
**levels** 17:7 21:8,23 57:5,9
**lie** 48:19 50:7
**lied** 50:5
**lies** 18:24
**life** 49:25 53:4 55:25
**light** 22:17 24:12 49:8
**like** 12:8,24 16:22 18:15,16
19:21 25:14 27:2 28:8,8 29:10
40:21 45:7 46:3,16 49:1,10

52:25 54:14,19,20 55:14 56:3
56:4,9 60:9,14 62:5
**limiting** 38:12
**line** 3:16,16 45:17,19 59:18
**listed** 7:4
**listen** 62:4
**little** 10:9 20:7 47:4 56:23 58:13
**loaded** 58:22
**lobby** 22:19
**local** 7:16
**long** 18:16 26:8 28:23 31:7
33:16 40:3,6 61:24 62:2,3
**longer** 51:1
**longest** 49:24
**look** 18:13 24:12 28:5,7,11 29:22
29:3,7 40:21 47:18 49:2,10
51:4
**looked** 26:19
**looking** 5:23 25:24 29:10
**looks** 20:13
**lose** 16:23
**lost** 51:15 60:8
**lot** 10:10 28:8 29:7 38:2 43:21
51:12 53:4,4 55:3
**love** 44:7 48:3 55:4
**low** 16:13 42:19,20
**loyal** 37:13
**lucid** 38:1
**lucky** 8:7
**lying** 9:17 40:5 50:1

---

**M**

**M** 1:18
**Mace** 10:23,24 40:25 41:7,11
**made** 26:3 23:11 47:11 49:16,17
53:3 55:5,6
**majority** 46:23 51:11
**make** 11:7 42:12 46:18 49:10
50:4 54:21 55:1 56:24 58:13
60:3
**makes** 10:16 20:21 25:13,13
32:9,11 59:19
**making** 5:5 19:6 51:3 55:7
**man** 28:8 29:11 42:15 43:22,22
44:6 59:4
**manner** 44:1
**many** 9:5 12:10 15:24 35:9 36:5
38:11 45:6,6 46:22 48:18
**marijuana** 24:16,19,21 25:9,15
25:25 28:7,9,21 29:3 58:10
**Marked** 3:15
**marks** 41:23
**matter** 18:21 62:11
**matters** 32:20
**may** 5:18 8:7,18 9:6 30:20 62:5
**maybe** 8:24,24 24:8 38:13 47:16
58:12 62:3
**mean** 12:10 14:9 15:2,16 17:3
24:1 27:1,2,5,20 28:5,17 29:2
29:10,22,2 4 42:25 49:21
52:17,21 53:22
**means** 27:6 34:13 57:22
**meant** 58:6
**medical** 7:23 8:1 34:22 36:22
**medicinal** 24:22
**medium** 48:13
**mellow** 58:11
**mellows** 12:8
**member** 39:11
**memorandum** 5:10 24:6 45:3
**mental** 56:25
**mention** 24:18
**mentioned** 58:10,20
**mentions** 7:6
**mess** 16:23 17:2
**messed** 25:17
**Miami** 1:2,6 2:3,3 7:12 62:15,15
**Miami-Dade** 51:1
**microphone** 10:4

**might** 28:19 37:9 48:7
**milk** 37:8
**million** 32:9,11
**mind** 20:6 35:2 53:11 55:12
**mini** 9:17 15:14
**minimum** 48:1
**minor** 7:17
**minority** 24:20
**minutes** 31:9 32:19 40:4,9
**misactions** 44:10
**mishap** 52:14
**misinterpreted** 24:2
**mislead** 50:18
**missed** 5:23 6:11
**mistakes** 53:4,5
**mitigate** 50:13
**mitigation** 51:4
**mom** 46:4 47:11 54:25
**mom's** 47:7,11
**money** 60:2
**months** 5:13,14 21:15,21,22
22:7,10 23:4,5,10 24:11 31:18
31:18,19,19 42:22,22 43:20
44:20,22 48:1,1 49:6,6,7,25
50:1 55:11 59:14 60:19,22
**more** 7:24 10:10 12:18 15:22
25:4 26:3 29:3 31:9 49:3
50:22 52:9 55:17,22 56:3
58:23 59:24
**MORENO** 1:11
**morning** 4:7,16,21,22 14:20
32:5
**most** 15:6 22:17 38:4 40:12 45:5
**motion** 45:2 48:20 50:13,15
**moved** 34:11
**movie** 54:15
**much** 10:13 12:19 13:6 16:11
18:11,12 25:23 29:22 44:25
58:23 60:5 62:6
**multiple** 27:12 47:14
**murders** 47:15
**music** 62:4
**must** 5:23
**myself** 23:9 52:11 56:18

---

**N**

**name** 33:20 39:13,16 54:6,7,8
**near** 34:17,17
**need** 15:4 43:17
**needs** 23:23 43:14,14,18,18
**negating** 50:19
**negative** 36:20
**neighborhood** 47:7 56:10
**nerve-racking** 55:22
**nervous** 52:18
**never** 9:3,8 12:6 47:21 52:13
**new** 5:25 6:20 7:4 36:19 44:3
46:2 48:4,5,9,10 51:12
**newspaper** 45:21,25 46:11,17
**next** 5:6 10:21 39:7
**Niagara** 58:22
**nickname** 54:11
**nolo** 19:23
**none** 39:3 41:15
**normally** 58:25 59:8
**North** 2:3 62:15
**note** 45:8
**notebooks** 46:13,14,19,20
**noted** 45:10
**nothing** 18:20 20:2 41:13 54:20
**Notice** 61:15
**notion** 43:10,11
**notoriety** 12:16,16,16
**November** 1:7 7:9
**number** 1:3 4:5 44:18 45:16
50:20
**numerous** 36:19 42:25

---

**O**

object 6:1
objecting 56:13
objection 6:1,4,15,16 17:6,9,11
  18:18 21:6,9 56:17 61:7,10
objections 5:6,15,21 42:12 56:13
  61:4
obligation 5:3,6
observed 40:8,24
obtained 40:6
obvious 56:23
obviously 18:22 24:7 25:21
  30:14 48:18 51:9,18,20
OC 35:17 41:9
occurred 10:25 51:9
Octave 1:7 4:4,20 60:21
October 6:23 7:7,13
off 16:13 17:7 19:5 39:14
offender 59:10
offense 5:11 8:12 17:14 21:7
  22:5,25,25 43:24 56:9,13,17
  57:21,23,24 58:3,4,6 59:21
offenses 6:20
Office 1:14
officer 4:15,16 5:10,11,13 6:6,10
  6:14 7:2,4,9,14,15,16,23 8:4
  9:7,14,16 10:15 11:4 14:14,15
  14:16 15:9 17:24 18:1 19:12
  22:4 23:21 25:1 31:12,14,17
  31:20 34:4 35:5,16 36:10,11
  36:13 37:22,24 38:18 41:3,8
  41:10,20 43:4,5 45:18 55:9
  56:14 57:24 58:3 59:16 60:8
officers 34:6,20 35:19 36:5,7,15
  40:23 41:2 45:15 49:17
officer's 43:8
Official 2:2 62:14
Oh 7:3 27:14 28:10 52:7 60:11
okay 4:12,18,23 6:15,22 7:8 8:14
  8:17 10:7 11:8,11 14:4 15:24
  19:15 21:5,22 22:16 25:8 30:3
  30:7 31:10,21 32:1,14,22 33:7
  34:1,8,13,19 38:6 39:9 40:9
  41:25 42:7,9 50:4 52:2 53:21
  54:21,23 55:21 56:11 61:21
  61:21,24
old 9:1
older 17:24
once 7:25 8:4,24 26:3 53:7
one 4:13 16:10,15 18:24 19:18
  20:8 24:13,15,20 26:22 28:12
  28:14,14,17,19,2 0 30:1,6 32:4
  36:6 37:1 38:10 40:19 41:3,8
  45:17 47:14,20 50:22 51:14
  51:19 53:12,13,15 56:6 57:1,5
  57:5,7,22 60:15
only 4:13 19:11 23:19 28:18
  29:11 30:25 33:23 40:9 41:3,8
  43:24 45:17 50:7 54:13,25
  55:23 61:12
opportunity 43:19 52:10
opposed 17:13
opposition 37:14
options 22:24
oral 6:16
order 9:15,18 59:25
original 46:24
originally 23:8 47:2,20 48:16
  59:15
other 7:5 11:11 12:1 13:25 14:1
  14:2 15:8,9 16:21 17:3,4,9
  21:6,6,9 22:7 24:19 25:14,18
  29:10,20 30:2 32:4,20 34:20
  35:1,2,3,7,17,19,21,24 36:7
  36:15,16 38:16 41:2,4 42:3
  46:9 47:16 48:8 51:14 54:10
  54:18 60:5 61:4 62:3
others 26:2 58:21 62:6
otherwise 50:2
out 12:8 17:17 23:18 28:23 29:2

46:5 47:7,8,11 50:15,24 58:11
  58:25 60:10,25
outlining 24:6
outright 25:19
outside 4:1 22:19
outstanding 26:6
over 22:20 50:21
overly 58:13
overrepresented 25:24 26:13
overrule 56:16
overrules 18:8,10
own 27:11 50:2

## P

Page 3:2,16,16 8:21 19:22
paid 45:18 52:7,8
paper 7:1 49:3,4,4,14
paragraph 7:5,6,8,24 57:7,9
paragraphs 7:5 42:24
pardon 58:2
parents 46:3
part 10:13 11:10 37:4 60:15
participate 60:24
participated 14:9
particular 29:8 32:18
particularly 8:22 54:17
parties 43:3 56:11
passed 50:16
past 25:18 49:1 52:3
PASTOR-HERNANDEZ 2:1
  62:13
pay 60:8
penalties 8:3
pencils 46:13,15,16,19,20
pending 26:1 29:18 44:2,4 49:9
  50:7,10 58:19 59:6
people 13:23 15:3,6 17:4 22:18
  38:4 40:12 42:16 53:4 55:3,6
  56:8 59:1,2 60:1,5 62:3,5
people's 60:2
pepper 52:22
perceive 56:2
percent 48:22,23
perfect 46:21
permitted 50:2
person 14:9,11 15:9,15 41:8
personally 52:10
persons 35:4,9
perspective 22:16
phone 46:12
phones 47:10
physical 6:24 34:12 35:16 36:8,8
  36:15 37:6
physically 36:5
picked 45:25
place 7:7 9:22 41:11
placed 34:21 36:13 60:23
placing 36:16
Plaintiff 1:5
plea 9:22 19:23 32:1 42:24 47:3
  50:14,14,19,20,2 0 51:5,6,7
please 4:15 33:20
pled 47:22 48:15 57:12
pod 10:20 39:20 51:15
point 16:11,14,15 28:12,19,20
  29:11 34:11 35:12,16 36:12
  41:3 43:2,8 47:20 49:22
points 6:2 16:8,21 20:24 23:16
  24:14,24,25 9 28:7,12,21 29:3
  29:4,9 34:16
portion 34:9
position 18:18 21:13 28:7 31:21
positive 55:6
possession 40:7 58:22
possibility 48:6
possible 16:5 48:9
pot 24:25
power 57:8,10
precisely 19:2

prepare 30:23
prepared 13:21 42:18,19
presence 4:2
present 27:20 33:10
Presentence 4:24 21:12 56:12
  58:10
presenting 13:7 51:3
presents 19:22
Preserved 61:9,12
press 45:10
presumed 58:24
pretty 18:11,12 27:21 28:24
prevent 57:8 59:7
previously 15:15 33:11 56:15
primarily 26:9
prior 20:20 24:13 38:17,25
  42:17 50:15,25 56:9 58:25
prison 5:14 9:4,5,8,12 39:17
  60:25
Prisons 7:10 60:22
privilege 30:19
pro 30:10
probable 15:1 47:5
probably 9:2,15 11:3 15:4 16:6
  16:10,10,18 20:5 24:1,20
  25:22,24 28:15 30:19 42:17
  48:13 51:11 53:8 60:5 61:25
probation 4:15,16,17 5:10,11,13
  6:6,10,14 7:2,4,9 17:24 18:1
  19:12 22:4 31:12,14,17,20
  46:24 55:9 56:14 57:24 58:3
  59:16
problem 59:3
problems 24:22
procedure 15:20
proceed 30:22 31:2,3
proceedings 1:10 4:1 32:21
  62:11
proffer 33:2
program 43:16 47:25,25 48:2,5
  48:6,7,8
programs 51:13
proof 49:21
proper 16:6
properly 5:4
prosecuting 25:15
prosecution 47:19
prosecutor 16:16 32:2 47:1 55:9
proud 55:7
provable 49:23
provided 17:16,20,24
provoked 12:22
PSI 42:25 46:22 47:23
pulled 43:7
punched 41:21 43:5
purchased 48:21
purpose 20:8
purposes 17:19 19:25 24:22
pursuant 57:7
pursue 29:25,25
put 7:1 10:20 33:3 44:20,24
  47:10 50:13,14 52:11 56:20
puts 24:14
P.A 1:22

## Q

qualified 51:2
qualifies 19:24
qualify 48:1,5,6
question 19:23 28:10 33:23 35:2
  37:1 50:9
questioning 31:8
questions 32:25 33:1 36:2,24
  37:11 38:8 42:1 48:23,24
quid 30:10
quite 47:22 48:2
quo 30:10
quote-unquote 47:12 48:3

## R

R 62:9
Raise 33:17
raised 59:14
raising 18:2 46:13,13
random 8:7 45:20
range 5:12 21:24 22:10
rape 26:2 44:3 58:23
RDAP 43:16 47:25,25 48:2,5,6,7
  48:12
reached 60:10
reacted 35:15
reacts 9:10
read 4:24,25 5:9 32:7,8 45:21
  46:11,22 54:22 56:11
ready 32:24
really 15:2,5 17:17 24:12 26:12
  45:17 50:5,7 53:10 57:19
reason 19:1 28:18 30:13 37:4
  45:9 54:13 56:14,19
recall 39:14
received 3:15 7:9
receiving 6:2 34:23
recess 32:19
recitation 32:25
recognize 60:5
recommend 23:9 42:20
recommendation 16:13 23:5
  44:21
recommending 31:14
recommends 5:13 57:21
record 58:8
records 7:23 8:1
red 18:14
redirect 3:7 41:15,17
reduced 58:4
reduction 9:3 44:16
refer 18:21 20:3
reference 19:19 20:12
referred 7:18,24 13:18 18:1
  56:16
referring 11:10
reflects 53:10
regard 16:2 18:22 23:17 45:14
  51:1 52:10
regarding 61:14
relates 19:13 29:7
release 41:23 60:22,23
released 7:17 14:1,3 39:7,18
relevant 12:1 20:13 27:22 45:6
remain 15:7 58:4
remember 8:24 56:7
removal 53:12
remove 23:16
repeatedly 24:20
replaced 45:23
replacement 46:10
Report 4:24 21:12 56:12 58:11
reported 2:1 39:4 45:17
reporter 2:2 10:5 62:14
Reporter's 3:8
reports 39:15 41:21
represent 26:25 30:5
represented 12:2 46:23 47:20
  58:14
representing 27:7,8
request 17:6
reserve 56:18
reset 43:15
resolution 55:14
resolve 26:23,24
resolved 27:10 29:21
respond 34:21
responded 36:10,14
responding 40:7
responsibility 5:19 6:3,7,19
  16:24 17:7 21:8,18,24 22:5,18
  22:24 44:9,16 52:14 57:4,13
  57:17 59:13 61:8

rest 46:19
restrain 35:12,15,24 38:5
restraining 36:11
rests 42:6
result 44:5
resulting 43:1
results 36:20
reviewed 4:24 34:5
revoke 16:8
rhyme 54:8
right 5:1,3 8:9 9:18 11:6 15:7,19
16:15 18:2 19:16 20:5,7 21:6
21:11 22:1 31:12 32:13,14,16
33:4,12,17 35:19 36:24 38:13
41:15,25 42:3 45:1 53:12,13
54:21 55:13 57:23 59:15
60:14 61:13,14
roaming 47:9
robberies 28:11 47:14
robbery 17:16 28:17,20 29:2
47:1,3,5,15,18,20
RPR 2:1 62:13
rule 9:3
rules 42:21
rulings 61:5
running 54:17

S

same 18:7 26:1 35:24 59:15,18
62:4
satisfied 61:19
saw 34:8 35:20,21 40:17 55:23
saying 29:1,6,9 30:7,11,12,12
49:5,6,6 50:22 52:21 53:3
says 5:11 16:22,23,25 19:22
20:18 45:21 47:19 49:19
scared 47:17
scary 55:25 56:3
school 46:14,16
scratch 41:23
scratching 36:1
seat 32:16
seated 32:23
second 5:9 36:10
Section 5:9 19:25 57:7
see 9:8 14:24 15:20 31:10 34:11
34:16,17,20 36:1 39:24,24
40:1,10,14,24 41:3,4 42:25
44:13 51:16 60:12 62:2
seeking 21:19 22:9 27:24 55:10
seems 9:11 20:7 25:14 28:8
60:14
seen 11:14
self-defense 48:21
sends 50:1 51:8
sentence 5:8 8:19 21:13,19
24:12 29:24 31:13 42:12
43:22 49:18,24 51:7 59:13
60:25 61:3
sentenced 56:8 59:9
sentences 9:3
sentencing 1:10 4:23 5:10 8:18
11:22 16:23 19:25 20:14 24:6
25:22 26:4 29:14 30:22,24
31:5 45:3
serious 19:7 25:4 26:3 51:10
58:23
seriously 44:14
seriousness 43:24
seven 33:5,6
several 11:16 43:5 46:12 49:17
severe 7:25
severity 8:1 22:14
Shakespeare 30:24
shaking 52:19
show 36:19 40:11 52:21
showing 38:18
sides 61:13
sight 51:15

signals 18:13
silent 15:8
since 6:21 9:22 30:20 42:23
51:21 55:23 59:4,11 60:1
sir 4:21,22 5:1,2 17:23 18:3
33:14 42:8 52:1,17 53:3 61:18
sitting 26:8
situation 52:10,12
slightly 26:12
slow 34:15
smack 37:24
smart 60:12,12
Smith 50:3
smoking 24:25
socks 46:6,7
some 5:18 9:2 12:21,21,21 24:6
24:7 27:20,21 28:19 34:5
36:11 44:7,9 45:9,13,25 47:24
48:8 49:13,15,21 50:22 55:6
56:8,25 62:5
somebody 11:8 30:17
someone 12:17,17 14:25 50:17
53:7,9,10 55:25 59:9
something 9:11 37:19,23 43:4
45:8,21 46:11,25 49:5,10:5 18
51:9 54:14,25 56:24,25 57:11
57:19 60:9
sometimes 8:21,23 53:10
son 54:25
sorry 10:6 18:9 52:11,12 61:24
South 26:2,8,21 27:7,9,11 28:2
44:3 45:18 50:8
Southeast 1:19,22
SOUTHERN 1:1
speak 51:19
speaking 10:18 22:22
speaks 21:2
special 3:4 13:19,20 33:9,18
44:24 61:1
specific 24:10 49:12
specifically 7:12 18:21
spends 43:12
spoke 36:6 51:15
spray 35:17 41:9
sprayed 52:22
stairs 35:17 41:5
stand 30:4
standing 42:14 52:12 53:6
started 35:10
starts 9:9
State 9:1 20:13 51:10
stated 51:21 56:14
statement 19:6 27:17 30:15
statements 14:23
states 1:1,4,11,14 2:2 4:3,8 5:9
8:3,20 17:21,25 18:3 19:19,25
25:16 56:15 62:14
stating 55:10
STENOGRAPHICALLY 2:1
stickler 18:15
still 19:9 26:5 29:25 41:24 43:22
55:19,19 58:24 59:14
stolen 45:22
stop 43:6
story 49:3
straight 47:17
Street 1:22
streets 47:10
strictly 50:6
striking 7:15
strong 30:15
stupid 28:16 59:2,4
submit 20:18,20
submits 44:17
subpoena 40:8
substance 43:17 58:12
substances 36:23 37:7 58:12
sufficient 30:23
suggest 36:22

suggested 59:15
suggesting 9:20 56:22
suggestion 59:23 60:1,7
suggests 44:15
Suite 1:23 2:3 62:15
supervised 60:23
supervisor 17:14
support 45:6 55:4
supported 55:2
sure 11:13 17:3 25:7,7,7 29:1
31:3 32:8,12,40:4 46:18 54:22
surgery 7:25 14:16 23:23
surprised 12:11
surrounded 42:15
surrounding 22:15
suspect 25:23 56:22
sustained 17:15
SWORN 33:18
Sylvester-Pierre 4:17

T

T 62:9,9
table 3:1 16:14
take 17:7 21:16 22:4,23 29:4
31:8 44:9 45:8 46:2 49:14,15
50:20 52:14 57:3,12,16 58:10
58:16 62:4
taken 7:16 9:21 13:20 14:22,23
25:19 47:21 57:2
takes 15:21 41:11 43:23 44:13
54:16
taking 47:3 57:22
talent 60:4
talented 42:15
talk 5:18,21 13:16 17:3 19:11
20:14 25:22 27:2 29:15 30:9
31:6 32:3,16 34:3 51:6 60:22
talked 12:9 13:1 15:16 34:3
46:12
talking 20:14 22:18
target 12:13,14
tattoo 53:9
tattoos 53:9,12
tell 12:3 13:8,22 21:18 31:22
33:20 34:3,8,13 35:5,10 48:23
49:11 52:15 59:25 62:2
telling 31:22
temporarily 39:20
terms 12:1 16:7 46:23
test 36:20
tested 36:17
testicles 41:22 43:8
testify 15:7,8
testifying 30:15,16,17
testimony 14:23 57:14
tests 36:20
Texas 44:10,18
thank 32:15 37:11,17 38:7 39:5
41:14,25 42:2 44:23,25 52:5
55:2,8 61:21,23
Thanks 22:22
Thanksgiving 46:9
their 35:40 25 41:6 47:10
49:17 52:19 53:10 56:1
themselves 15:5 20:3
thing 7:4 10:16 18:7 23:15 25:25
26:11 27:11 32:4 35:24 39:25
50:7 51:14 56:7 60:14
things 5:18 9:5 12:1,17,18 17:3
16:15 24:6,8 26:7,10 28:16,23
29:10 30:25 42:16 44:14
45:11,14,24,2 4 46:1 49:11,11
49:13,14 59:2,4
think 4:13,14 6:18 10:23,24,24
12:1 13:11 15:10 16:1,5,7,25
20:21 22:18 24:11,24 25:3,8
25:10,13,21 26:14,23 27:15
27:22,23 28:3,5 30:1,23,23,25
31:12,13,22 33:15 37:21,25

38:1,2,4 43:13,18,23,24 44:7
44:22 46:15,19 47:16,23,24
48:5,10,11,12 49:7,25 51:7,12
53:8,15 56:8 57:1,6,8,15
58:13 59:2,13 60:2,24
thinking 25:21,23
thinks 9:23
third 6:12 36:13 44:4
though 9:7 17:3 41:6 55:6,11,12
55:13 58:9 62:5
thought 37:8 45:5 51:22 53:23
62:3
threatening 13:10
three 5:13 6:2 9:1 12:2 16:8 32:6
34:7 35:21 39:3 46:3 47:13,16
48:16 57:4 60:23
through 7:6 25:19 42:25 60:3,4
time 12:3 24:10 26:8 30:23 33:8
35:1,9 36:14 40:5 42:23 43:12
43:15,21 44:7,23 46:16 51:11
51:13 52:5 55:5
timeliness 57:6
times 12:4 43:5 46:12,22 55:2
Title 5:8
today 5:18 11:22 16:6 29:14
30:9 42:14 52:6 53:6 55:3
56:3
token 26:1
told 15:3 35:9 53:7,9
top 39:14
total 5:11 22:5 58:4
totality 28:6
tough 44:7 48:3
towards 35:11
train 61:25 62:4
transcription 62:11
transferred 39:19,20
treated 7:17
treatment 34:23 60:24
trial 9:17 15:15,23 27:10
tried 38:5
tries 12:12
true 11:23 19:7 23:1,2,3 57:11
truly 43:25 52:12 57:12
truth 15:3
truthful 48:22,24
try 43:10
trying 14:12 35:14 37:5 43:6
49:10
turn 52:2
turned 41:1
turns 41:5
twice 41:22
two 4:13 6:25 15:21 16:21 17:7
17:17 21:8,23 22:24 24:14,24
25:9 28:7,11,21 29:9 32:5
34:15 35:23,25 36:16 42:17
44:2 46:3,7 47:14,15,16 50:21
57:8 58:19 59:6 60:6
two-level 21:17,17 57:10,16,20
59:12
two-point 48:19 58:17
T-shirts 46:6,7

U

ultimately 43:7
uncharged 8:11,16,18
under 8:17 17:18,18 20:4,4
21:19 24:7,23 35:22 36:22
37:19,23,24 38:3 43:3 57:1,11
59:11 61:22
underplaying 49:11
underprivileged 46:3
understand 10:18,19 16:20
18:16 21:23 10:26 18 27:18
28:6 43:21 46:21 48:14,25,25
49:19 52:20 56:10 61:17
understanding 11:25 27:8 36:18
39:1

underwear 46:6,7
unfavorably 29:21
unit 7:13
United 1:1,4,11,14 2:2 4:3,8 5:8
  8:3,20 17:21,25 18:3 19:19,25
  56:15 62:14
unless 22:21 30:18 60:2
unobjected 42:24
unsportsmanlike 9:10
until 36:13
upcoming 46:15
upheld 19:24
upward 44:21
use 10:4 11:4 20:8 33:12 47:24
  52:16 62:5
used 9:3 10:24 56:6
uses 10:5
usually 12:15,18 29:1 54:14
U.S 4:17 62:14

**V**

variance 25:19 44:21 58:16 59:2
  59:8
vary 56:19
verify 49:16
version 13:3,4,5,6 30:18
versus 4:3 8:20 17:21,25 18:4
  19:19 21:7 56:15
very 12:9 30:11 41:16 44:25
  51:9,22 56:5,7
victim 14:10,11 27:4 34:4,11
  36:6 41:3,20 60:18
video 11:14,14,15,24,2 5 34:8,11
  34:21,22 35:3 36:22 38:18
  39:24 40:3,6,11,12 52:21
videotape 34:5,9
view 20:24 26:3 27:19
violation 46:24
violent 12:7
visible 41:24
volunteered 51:16
voted 24:21
voters 24:21
vs 1:6

**W**

wait 50:22
waiting 7:23
wall 43:9
want 5:21 8:11 15:25 16:4 21:19
  22:10,21 23:15 24:2 27:4,5,16
  29:17 30:7,10,11,14,21 32:18
  33:2 37:13 38:8,11 40:4 45:2
  45:13,22 46:24 50:3 51:25
  52:3,5,15 54:23,24 55:1,8
wanted 13:13 15:7,8 30:21
  50:20,21 54:21
wants 16:18 30:18 31:5 36:25
  48:3 51:6
warrant 26:6
wasn't 29:9 47:21 49:9,23
watch 40:1,3
watched 40:8,9
watching 36:21
way 4:12 7:22 12:5 15:10,13
  16:6 30:4 33:15 43:11 48:15
  51:14 54:24 55:6 59:17 60:15
ways 43:10
weapons 44:18 48:21
week 41:24
weeks 42:17
weigh 23:17 24:5,7
weighing 48:14
weird 10:21
welcome 22:19,20
well 4:25 5:20 6:4 8:5 10:1 11:1
  11:22 13:6,10 16:10 18:12
  20:25 22:3 23:20 28:19 29:5
  34:20 36:21,21 38:13 45:4

54:13 55:17,19 56:4,16
went 10:21,23 11:4 40:23 47:6
  48:17 50:3
were 4:1 6:21 12:1,10,10,11 16:3
  21:11,16 23:11 26:11 27:22
  32:20,21 33:5 34:7,15 35:8,9
  36:5,7,14 37:5,8 38:3,16,21
  38:22 39:7 41:19,24 42:18,19
  42:19 43:9 45:5,8,22 46:5
  47:3,16 48:17,18,24 49:20,20
  49:21 56:12 58:17 59:4
weren't 25:15
we'll 31:10 32:19
we're 4:23 5:17 7:23 24:22
  30:22 31:2,2,3 33:10
we've 26:10 32:22
while 7:11 12:7 16:23 29:15 32:3
  42:18 43:1 45:16 48:8 51:14
  60:25,25
whole 29:7 39:25
Wilkie 2:2 62:14
wine 31:1
winning 53:1
wisdom 9:2
wiser 29:22
wishes 42:11
withdraw 16:18 57:7
withdrawing 16:11
withhold 17:18 19:9,13,23
witness 14:4,22 15:17 33:14,18
  33:19,21 36:18 39:3
witnessed 15:9
witnesses 14:7 15:16 27:13,16
  27:21,22 30:15 33:5 34:7
  35:19,21 57:14
wonder 27:2
wonderful 22:19
word 11:3
words 25:14
work 14:15,17
works 45:8,10 49:8
worried 52:24
worry 52:7
worse 17:4 37:18,23 38:2
worth 46:7
wouldn't 14:4 15:4 22:3 48:4
  60:3,5
write 51:20
written 6:15
wrote 30:25

**Y**

yeah 13:14 18:5,11 21:10 24:18
  26:22 53:14 54:4,12 55:13
  62:2
year 32:9,11 46:15,19
years 5:14 12:3 46:7 55:18 60:24
yield 37:13
York 44:4
young 42:15 43:21,22 44:6
  45:16 59:1,2,4,9
youthful 59:9

**Z**

zero 28:12,15

**$**

$10,000 46:4
$200 61:1

**1**

1 61:1
1st 7:9
10 5:14 8:15 13:20,22 31:9
10:55 32:21
100 46:16
11:38 62:7
111 8:3

111(b) 8:3
1132 1:19
12 10:20 13:20,22 15:3,4 33:6
  39:22
1213 17:21
13 1:7
13-3 1:5 2:3 62:15
1307 17:25
1316 8:21
1336 8:21
1345 19:20
1346 19:22
14 61:16
15 28:13,14 49:6 59:5
15-year-olds 28:16
18 5:8 8:3 28:14,17
19 23:1,4,8 26:14
19-20273-Criminal 4:5
19-20273-CR-MORENO 1:3

**2**

2 61:1
2K2.1 20:1,4
20 17:13 20:21 21:7 22:25 49:6
  59:20
2013 18:1
2016 17:22
2019 1:7 7:7,13 18:6
21 5:12 22:25 23:5 57:23
22 17:14 20:20 21:7 22:25 44:18
  57:23 58:5,7 59:14,21
23 21:24 22:2 57:9
234 19:20
24 22:6,7 44:18 57:8 58:4
29 7:13
29th 6:23 7:7

**3**

3E1.1(a) 57:9
3E1.1(b) 57:7
3rd 1:19
30 31:19
301 1:23
305-523-5118 2:3
305.523.5118 62:15
315 1:22
33 26:14
33128 2:3 62:15
33301 1:16,23
33316 1:19
3553 24:7
3553(a) 5:9 43:23 44:22
36 3:4,5 48:1 49:25
37 23:4,10 24:11 26:14 42:22
  48:1 49:7,25 55:11
37-month 51:7
38 3:6

**4**

4A1.1 20:4
40 7:5 31:18
400 2:3 62:15
41 3:7 26:14
44 7:6 42:25
455 8:21
46 5:12 21:15 23:4,5 42:22,22
  59:14 60:19,22
48 7:6,6,8,24 42:25

**5**

500 1:15
57 5:13 21:15 23:5 42:22 59:14
57/71 22:1

**6**

62 3:8
63 22:7,10 44:20

**7**

7th 1:15,22
70 30:23 31:18
732 17:25
7600 46:15,20
78 22:7,10 44:20

**8**

80 55:23
822 17:21

**9**

9:54 4:1
90 31:18
922(g) 18:22,23 19:11 20:12,13
954-356-7255 1:16
954-356-7336 1:17
954-467-3599 1:24
954-467-6767 1:24
954-523-2656 1:20
954-523-7774 1:20
96 21:21,22 43:20 44:21
99.9 48:22,23